```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION


AMERICAN COUNCIL OF THE BLIND    )
OF METROPOLITAN CHICAGO et al.,  )
                                 )
        Plaintiffs,              )
                                 )
                                 )
    v.                           )  No. 19 C 6322
                                 )
                                 )
THE CITY OF CHICAGO, CHICAGO     )
DEPARTMENT OF TRANSPORTAION,     )
LORI LIGHTFOOT, in her official  )
capacity as mayor of the City    )
of Chicago, and THOMAS CARNEY,   )
in his official capacity as      )
Acting Commissioner of the       )
Chicago Department of            )
Transportation.                  )

        Defendants.
```

Memorandum Opinion and Order

The American Council of the Blind of Metropolitan Chicago (the "Council") and three of its individual members or officers filed this lawsuit claiming that efforts the City of Chicago has undertaken to make its intersections safely accessible to blind and deaf-blind pedestrians are insufficient to satisfy the requirements of federal law. In particular, plaintiffs claim that the City's failure to install accessible pedestrian signals ("APS") that convey warning information such as "walk" and "don't walk" through audible and tactile means, even as it made

substantial investments to improve pedestrian safety generally, amounts to discrimination under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Plaintiffs seek declaratory and injunctive relief on behalf of themselves and a class of similarly situated individuals. They name four defendants: the City; its mayor, Lori Lightfoot, in her official capacity; the City's Department of Transportation ("DOT"); and DOT's acting commissioner, Thomas Carney, in his official capacity. Defendants have filed a partial motion to dismiss the complaint, which I grant in part for the reasons below.

At the outset, I agree that Mayor Lightfoot, Acting Commissioner Carney,[1] and DOT should be dismissed from this action. Plaintiffs' claims against the individuals, named only in their official capacities, are duplicative of their claims against the City and DOT because "[a]n official capacity suit is the same as a suit against the entity of which the officer is an agent." *DeGenova v. Sheriff of DuPage Cty.*, 209 F.3d 973, 975 at n. 1 (7th Cir. 2000) (citing *McMillian v. Monroe County, Alabama*, 520 U.S. 781, 785 n.2 (1997)); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Moreover, neither DOT nor its commissioner is amenable to suit. Plaintiffs acknowledge that under Illinois law, to which

---

[1] Since this lawsuit was filed, Gia Biagi was appointed as the Commissioner of DOT, but since neither DOT nor its commissioner will remain a defendant, there is no need to substitute parties.

2

federal courts look to resolve the issue, only entities with a "legal existence, either natural or artificial" are amenable to suit. *DeGenova* 209 F.3d at 977 n. 2. Plaintiffs resist DOT's dismissal, but they offer nothing to suggest that DOT is anything other than an operating department of the City with no independent legal existence. Accordingly, both the entity and its agent are dismissed. *See, e.g., Castillo v. Cook Cty. Mail Room Dep't*, 990 F.2d 304, 307 (7th Cir. 1993) (Cook County Department of Corrections not a suable entity); *Johnson v. City of Chicago (Fleet Mgmt.)*, No. 13-CV-04098, 2014 WL 1202960, at *2 (N.D. Ill. Mar. 18, 2014) (dismissing City of Chicago Department of Fleet Management with prejudice as a non-suable entity); *High v. Chicago Water Dep't,* No. 05 C 3547, 2005 WL 3527256, at *2 (N.D. Ill. Dec. 16, 2005) (dismissing Chicago Water Department and substituting City of Chicago as proper defendant).

Having clarified that the City is the only appropriate defendant, I turn to defendants' arguments that: 1) the Council may not proceed as a plaintiff because it has not alleged and cannot show that it suffered an injury-in-fact as required for Article III subject matter jurisdiction; 2) none of the plaintiffs has standing to pursue relief on behalf of deaf individuals; and 3) plaintiffs' claims are time-barred to the extent they are based on conduct prior to September 23, 2017. The first of these

3

arguments is unpersuasive because there is no dispute that the individual plaintiffs—all of whom are blind and claim injuries caused by the City's failure to provide APS adapted for blindness—have standing to sue on behalf of themselves and individuals similarly situated. Accordingly, the Constitution's "case or controversy" requirement is satisfied, and Article III jurisdiction is secure, regardless of whether the Council suffered any organizational injury. *See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 53 n. 2 (2006) ("the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."). Moreover, defendants do not meaningfully dispute that the Council has associational standing to sue on behalf of its members. *See Keep Chicago Livable v. City of Chicago*, 913 F.3d 618, 625 (7th Cir. 2019) (an entity has associational standing if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in their lawsuit") (quoting *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977)). Defendants insist that the Council "has not pled representational standing," Reply at 6, by which they appear to mean that the complaint does

4

not state explicitly that the Council brings claims on its members' behalf. But whether a plaintiff has standing is a legal issue that must be pled only in the sense that the factual matter contained in the complaint must be adequate to establish a basis for concluding that standing exists. And while it is true that the complaint asserts an organizational injury to the Council, the fact that the Council seeks no damages for that injury but pursues only injunctive relief for the primary and direct benefit of its members (and similarly situated indiduals) supports an inference that the Council intends to pursue these claims at least in part in a representational capacity. At all events, defendants do not dispute that the complaint's factual allegations support the first two elements required for representational standing, nor do they explain why the third element is relevant, since individual members are in fact participating in the suit. Under the circumstances, I am not persuaded that the Council must be dismissed for any reason compelled by Article III.

Where defendants' standing argument gains traction is on the question of plaintiffs' ability to pursue relief on behalf of deaf individuals. As defendants note, Article III's redressability requirement means that plaintiffs must be among those injured by the City's alleged failure to provide APS. Here, none of the individual plaintiffs claims to be deaf, and nothing in the

5

complaint suggests that the Council has members who are deaf or that the organization advocates on behalf of deaf individuals. The complaint describes the Council as:

> a consumer-based, non-profit independent organization that advocates on behalf of, and seeks to the improve the quality of life for, all blind and visually impaired residents in Chicago, Illinois. It is an affiliate of the Illinois Council of the Blind, which is a state affiliate of the national American Council of the Blind. ACBMC's officers and membership, around 38 people in total, overwhelmingly consist of people who are blind or low-vision.

Compl. at ¶ 18. The word "deaf" appears only three times in the complaint: once where it defines the term "deaf-blind," *see* Compl. at n. 1, and twice in allegations describing an outdated APS that "does not have a vibrating button indicating to Deaf-blind pedestrians when to cross the street, even though nearby street signs warn of 'BLIND AND DEAF' pedestrians in the area," *id*. at ¶ 27. But nothing in the complaint suggests that either the individual plaintiffs or the Council's other members were injured by the absence of a vibrating button on Chicago's APS. Accordingly, none of them is "among the injured" with respect to this violation or similar ones affecting only deaf individuals. *See Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000) (blind plaintiff lacked standing to pursue claims for ADA violations unrelated to his own disability). *See also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 949 (9th Cir. 2011) (en banc) (Article III

6

requires plaintiffs to show that injunctive relief "will vindicate the rights of the particular plaintiff[s] rather than the rights of third parties."). Nor does the fact that some members of the blind community may also be deaf elevate these particular plaintiffs' status above the level of "concerned bystanders." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982) (judicial process not intended to vindicate the "value interests of concerned bystanders"). In the context of ADA and Rehabilitation Act claims, courts have held that plaintiffs have standing only with respect violations affecting the specific disabilities they claim. *See Smith v. Bradley Pizza*, Inc., 2019 WL 2448575, *3 (D. Minn. June 12, 2019) (standing requires "a connection between the nature of a plaintiff's disability and the alleged violations"); *Riggle v. Valero*, 2016 WL 3149671, *2 (D. Neb. June 3, 2016) (plaintiff lacked standing to assert violations unrelated to his claimed disability); *Strong v. Walgreen Co.*, 2011 WL 5374125, *7-8 (S.D.Cal. Nov. 8, 2011) (plaintiff lacked standing to challenge barriers not relating to his own disability). The reasoning of these decisions is persuasive.

I am not persuaded, however, that any aspect of plaintiffs' claims should be dismissed as time-barred. Defendants appear to object to the complaint's account of dangerous experiences the

7

individual plaintiffs had at Chicago intersections not equipped with APS to the extent those incidents occurred more than two years before this suit was filed. As noted above, however, plaintiffs are not seeking damages for those (or any other) events, but instead seek to remedy dangerous conditions they claim are ongoing. Events that occurred more than two years prior to suit may provide background information relevant to plaintiffs' claims for injunctive relief, and I see no reason at this stage for cabining their allegations in the manner defendants suggest.

For the foregoing reasons, defendants' motion to dismiss is granted in part. The individual defendants and DOT are dismissed, as are plaintiffs' claims based on violations affecting only deaf or blind-deaf individuals.

                                  **ENTER ORDER:**

                                  **Elaine E. Bucklo**
                                  United States District Judge

Dated: March 9, 2020