```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION


AMERICAN COUNCIL OF THE BLIND    )
OF METROPOLITAN CHICAGO et al.,  )
                                 )
          Plaintiff,             )
                                 )
                                 )
     v.                          )  No. 19 C 6322
                                 )
                                 )
THE CITY OF CHICAGO, CHICAGO     )
DEPARTMENT OF TRANSPORTAION,     )
LORI LIGHTFOOT, in her official  )
capacity as mayor of the City    )
of Chicago, and THOMAS CARNEY,   )
in his official capacity as      )
Acting Commissioner of the       )
Chicago Department of            )
Transportation.,                 )
                                 )
          Defendants.
```

## Memorandum Opinion and Order

The complaint in this case challenges the City of Chicago's allegedly inadequate efforts to make its intersections safely accessible to blind and visually-impaired individuals. Plaintiffs, the American Council of the Blind of Metropolitan Chicago ("ACBMC") and three of its individual members, assert putative class claims for declaratory and injunctive relief for violations of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Plaintiffs have filed a motion for class certification aiming to certify a class comprising all blind or low-vision pedestrians who use City of Chicago's signalized

pedestrian intersections. Plaintiffs further request that the named plaintiffs be certified as class representatives and that Disability Rights Advocates ("DRA") and Proskauer Rose LLP ("Proskauer") be appointed class counsel. The motion is granted for the reasons that follow.

Federal Rule of Civil Procedure 23 sets out the requirements for class certification. First, a putative class must satisfy the requirements of numerosity, typicality, commonality, and adequacy. *See* Fed R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). Additionally, the class must be certifiable pursuant to one of three subdivisions of Rule 23(b). Here, plaintiffs invoke subdivision (b)(2), under which class certification is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Finally, the class must be "ascertainable," which is to say, it must be clearly defined based on objective criteria and must not be "fail-safe" in the sense that it may not be defined in terms of success on the merits. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015). "The party seeking certification bears the burden of demonstrating that certification is proper by a preponderance of

2

the evidence." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 433 (7th Cir. 2015).

Plaintiffs point to U.S. Census Bureau data indicating that over 60,000 Chicagoans are blind or visually impaired to establish numerosity—an element of plaintiffs' showing that the City does not dispute. The City likewise does not challenge plaintiffs' assertion that their claims are typical of those of the absent class members, who, like plaintiffs, require Accessible Pedestrian Signals ("APS") to receive the information that visual street crossing signals convey to sighted pedestrians, and who are constrained to use burdensome, unreliable, and less safe alternative strategies for crossing busy City streets. With respect to ascertainability, the class definition plaintiffs propose limits class membership to individuals who are (a) blind or low vision under the ADA and Section 504, and (b) use City's signalized pedestrian intersections. This definition clearly identifies the individuals falling within the class and is based on objective criteria. *See Mullins*, 795 F.3d at 660 ("class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way."). While it is true that the class definition is not limited in time, this detail is not fatal to class certification given that plaintiffs seek only declaratory and injunctive relief, see *Haynes v. Dart*, No. 08 C 4834, 2009 WL

3

2355393, at *4 (N.D. Ill. July 29, 2009) ("[t]he ascertainability requirement can be applied more flexibly in situations where individual notice to class members is not required, such as suits for equitable relief"), and, indeed, the City does not challenge the ascertainability of plaintiffs' proposed class.

With respect to the requirements of Rule 23(b), plaintiffs argue that this action exemplifies the type of class actions brought to vindicate members' civil rights vis-à-vis state actors that courts routinely find appropriate for certification under Rule 23(b)(2). *See Holmes v. Godinez*, 311 F.R.D. 177, 223 (N.D. Ill. 2015) ("[s]ince all class members seek the same declaratory and injunctive relief regarding IDOC's statewide policies and practices, we find that certification is appropriate under Rule 23(b)(2)"); *Johns v. DeLeonardis*, 145 F.R.D. 480, 484 (N.D. Ill. 1992) ("certification under 23(b)(2) is particularly appropriate in class actions brought to vindicate civil rights"). The City offers no response to plaintiff's observations on this front.

In the end, the City challenges only two aspects of plaintiffs' motion. First, it argues that ACBMC is an inadequate class representative because "it lacks the capabilities and organization necessary to serve as a class representative," has an "inconsistent and minimal history of APS advocacy prior to this lawsuit," and filed this suit without first obtaining its membership's approval by means of a vote. Opp. at 2, 6-8. But none

4

of these arguments articulates a legally relevant basis for denying class certification. Indeed, as the very cases the City cites reflect, the adequacy inquiry focuses on whether the named plaintiffs: 1) have interests that conflict with the class as a whole, 2) are sufficiently interested in the case outcome to ensure vigorous advocacy, and 3) have class counsel that is competent and willing to vigorously litigate the case. *Zollicoffer v. Gold Standard Baking, Inc.*, 335 F.R.D. 126, 158 (N.D. Ill. 2020) (rejecting the defendants' argument that the named plaintiffs had not satisfied the adequacy prong of the Rule 23(a) requirements) (internal quotation marks and citations omitted). *See also Conrad v. Boiron, Inc.*, 869 F.3d 536, 539 (7th Cir. 2017) (adequacy requires that the named plaintiff "be part of the class and possess the same interest and suffer the same injury as the class members," and "keep the interests of the entire class at the forefront.") (citations omitted). The City does not identify any conflict of interest between ACBMC—two of whose members are also named plaintiffs—and any absent class members, and the record supports the inference that ACBMC will advocate vigorously on behalf of the class, as it has participated actively in this litigation so far. For example, ACBMC submitted the testimony of a member of its Board in opposition to the City's motion to dismiss, see ECF No. 40-1;3 produced documents and information in response to the City's discovery requests; prepared and appeared for a deposition via its

5

current President, Deborah Watson; and provided testimony in support of plaintiffs' class certification motion, see, e.g., ECF No. 96-10. The City offers neither reasoned argument nor any authority to suggest that ACBMC's putative organizational shortcomings—the fact that it has no Facebook page, modest financial resources, and "decentralized record keeping," for example—have any impact on its ability to satisfy the adequacy criteria required by Rule 23(a).[1]

Second, the City argues that plaintiffs have not established commonality because they do not identify sufficiently specific common questions. This argument similarly fails to address the legally relevant criteria under Rule 23(a). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)," and is "typically manifest where...the defendants have engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (citations omitted). Plaintiffs assert that their claims present at least the following common questions:

---

[1] I note that the record also includes unrebutted evidence concerning the adequacy of class counsel. *See, e.g.*, Brandt-Young Decl. ¶¶ 3-10, ECF 96-1 (describing Disability Rights Advocates' experience serving as lead counsel in hundreds of disability civil rights class action law suits and obtaining precedent-setting victories on behalf of the disability community); Telman Decl. at ¶¶ 4-10 (describing Proskauer's significant experience in high-impact, class action litigation). The City raises no objection to ACBMC's choice of counsel.

6

(1) whether the City's policies and practices relating to APS discriminate against blind and low vision pedestrians by denying them the opportunity to benefit from the City's pedestrian street crossing signals; (2) what level of accessibility the City must secure with respect to its pedestrian signaling program in order to fulfill its program access obligations under the federal disability access laws; and (3) what types of alterations to pedestrian signals trigger the City's obligation to include APS under those laws.

Plaintiffs point to a number of cases—including *Am. Council of the Blind of N.Y. v. City of New York*, No. 18-cv-5792 (S.D.N.Y), a case substantially similar to this one—in which courts have certified classes based on common questions defined at similar levels of generality to those plaintiffs identify here. *See id*. at ECF 81 (Stipulation as to Class Certification), ECF 79 (Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (identifying common question "whether Defendants' policies and practices discriminate against blind and low vision pedestrians by denying them the opportunity to benefit from the City's pedestrian street crossings"); *Holmes*, 311 F.R.D. at 217-19 (N.D. Ill. 2015) (common questions in Rule 23(a)(2) class action on behalf of deaf and hard of hearing IDOC inmates included "whether IDOC systematically failed to provide class members with effective communication and adequate access to its programs and services;

7

whether IDOC provides class members with safe and effective visual notification systems to advise them of emergencies; whether IDOC has failed to establish sufficient policies to allow class members to participate in religious services under RLUIPA; and whether IDOC's policies and practices violate the Eighth and Fourteenth Amendments.").

At bottom, the City's objection to the specificity of the common questions plaintiffs articulate is directed to the merits of plaintiffs' claims. At the certification stage, however, the court does not "adjudicate that case," but rather "select[s] the method best suited to adjudication of the controversy fairly and efficiently." *Amgen v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460, 133 S.Ct. 1184, 185 L.Ed.2d 308 (2013). The City offers no authority or compelling argument to suggest that plaintiffs' claims are inappropriate for class certification because the common questions they identify are insufficiently specific.

For the foregoing reasons, plaintiffs' motion for class certification is granted.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: March 4, 2022