**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AMERICAN COUNCIL OF THE BLIND OF METROPOLITAN CHICAGO, ANN BRASH, MAUREEN HENEGHAN AND RAY CAMPBELL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>UNITED STATES OF AMERICA,<br><br>Intervenor,<br><br>-against-<br><br>THE CITY OF CHICAGO,<br><br>Defendant. | Case No. 19-cv-6322<br><br>Honorable LaShonda A. Hunt |

**PLAINTIFFS' MEMORANDUM OF LAW IN**
**SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES AND COSTS**

Plaintiffs commenced this action against the City of Chicago (the "City") to address the City's persistent neglect for the safety and well-being of its blind and low vision residents and visitors. In 2019, Disability Rights Advocates ("DRA") and Proskauer Rose LLP ("Proskauer") filed this action on behalf of a putative class of blind and low vision pedestrians to compel the City to comply with its obligations to install Accessible Pedestrian Signals ("APS") at signalized intersections across Chicago. Following six years of hard-fought litigation, on May 29, 2025, the Court entered a remedial order granting Plaintiffs a resounding victory. The City is now required to install APS at thousands of intersections with pedestrian signals over the next ten years, with defined benchmarks to monitor its progress. The value of this remedy to the City's blind and low

vision community is incalculable, and the City's own cost estimates show that it is substantial. (*See* sealed ECF No. 290 at 12 for City cost estimates).

Plaintiffs now seek an award of $5,053,558 in attorneys' fees and $247,159.77 in costs and expenses for their counsel at DRA and Proskauer, without whom such a historic result would have never been possible. DRA and Proskauer collectively devoted over 8,000 hours of professional time to compelling the City to fulfill its obligations under federal law, and now seek reimbursement from the City in accordance with the applicable fee-shifting provisions under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Rehabilitation Act"). Plaintiffs seek hourly rates consistent with market rates for services provided in the Chicago-area, and support their request with sworn statements from their peers, industry surveys, and awards in analogous cases. Plaintiffs' requested fees are fair and reasonable, and are just a small fraction of the value delivered to Plaintiffs and the class.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The City had ample opportunity to avoid this lawsuit. For over a decade, the City knew that the simple act of crossing the street at thousands of intersections posed acute safety risks to blind pedestrians (ECF No. 248 at 8); yet, by December 2018, the City had installed APS at only 11 intersections across all of Chicago (ECF No. 15). The City also declined Plaintiffs' invitation, sent months before filing this lawsuit, to engage in negotiations as an alternative to litigation. Declaration of Rachel M. Weisberg ("Weisberg Decl.") (attached hereto as **Exhibit A**) ¶ 63.

On September 23, 2019, Plaintiffs commenced this action alleging that the City violated the ADA and the Rehabilitation Act by failing to provide APS at signalized intersections. (ECF No. 1). Plaintiffs requested that the Court compel the City to install and maintain APS, and to adopt policy reforms to ensure that they are operated consistently with governing standards.

The City litigated aggressively, filing several unsuccessful motions, engaging in extensive discovery, and forgoing numerous opportunities to reduce fees and expenses. The City responded to Plaintiffs' complaint with a motion to dismiss, which the Court largely denied[1] as "unpersuasive" (ECF No. 43 at 4, 7), following which the parties engaged in extensive discovery to prove their claims. Plaintiffs deposed six fact witnesses and two expert witnesses. Declaration of Edward C. Young ("Young Decl.") (attached hereto as **Exhibit B**) ¶ 11. The City propounded discovery on each of the Plaintiffs, deposed nine class members, Plaintiffs' expert witnesses, and produced approximately 320,000 pages of documents requiring Plaintiffs' review. *Id*. Throughout discovery, the Court repeatedly rebuffed the City's obstructive and dilatory tactics, denying the City's motion to compel the Plaintiffs' retainer agreements (ECF No. 124), and granting Plaintiffs' motion to strike the City's untimely expert rebuttal report (ECF No. 177).

Plaintiffs asked the City to stipulate to class certification to avoid the expense of additional motion practice, but the City refused, resulting in even more motion practice with voluminous briefing, nine class member declarations, and numerous exhibits. Young Decl. ¶ 12. On March 4, 2022, the Court granted Plaintiffs' motion for class certification, opining that certain of the City's positions lacked "reasoned argument [or] authority." (ECF No. 150).

The City did not meaningfully come to the table to negotiate a resolution to Plaintiffs' claims, despite many opportunities to do so. The City was so recalcitrant that its surprise motion for a stay and referral to mediation—filed right before the Court was set to rule on the parties' dispositive motions—was resoundingly denied as well. (ECF No. 245) ("[N]either the City's motion nor its litigation conduct thus far suggests that mediation would be fruitful at this juncture.").

---

[1] The Court dismissed certain duplicative parties and claims of DeafBlind individuals (ECF No. 43 at 2), neither of which had any substantive impact on the liability finding or relief obtained.

On March 31, 2023, the Court granted Plaintiffs' motion for summary judgment in its entirety and denied the City's cross-motion,[2] finding that many of its arguments "simply lack[ed] merit." (ECF No. 248). The Court held that the City's operation of its network of pedestrian signals is a covered "service, program, or activity" under the ADA and that the overwhelming absence of APS deprives blind pedestrians of meaningful access in violation of the ADA and Rehabilitation Act. The Court further held that the City violated structural accessibility requirements when it constructed new or fully modernized signalized intersections without APS, and that reasonable modification and effective communication obligations independently required APS to ensure evenhanded access to pedestrian signaling information. The United States, which had intervened only in April 2021, also largely prevailed on its motion for partial summary judgment regarding lack of meaningful access, but had not moved on Plaintiffs' effective communications and reasonable accommodations theories.

Even after the City's complete loss on liability, Plaintiffs still had to engage in additional motion practice to compel relief. The City submitted a proposed remedial order supported by eight different declarations (six fact witnesses and two expert witnesses) necessitating eight more depositions—in addition to the City's deposition of Plaintiffs' supporting expert witness. On March 10, 2025, the Court entered a proposed remedial plan (ECF Nos. 349, 350) that was ultimately finalized and adopted on May 29, 2025. (ECF No. 365).

The impact of the remedial order cannot be overstated. When fully implemented, the remedial order will allow class members to move about Chicago safely and independently for the first time. The value is incalculable to the more than 66,000 blind and low vision residents of Chicago and 111,000 blind and low vision residents of Cook County who make up the class.

---

[2] Defendant's motion for judgment on the pleadings was granted in part *only* as to the United States' complaint. (ECF No. 248 at 36).

As part of the remedial order, the Court found that "Plaintiffs are deemed to be prevailing parties in this litigation and are thus entitled to reasonable attorneys' fees, costs and expenses for work performed in connection with this litigation" and authorized Plaintiffs to file a fee petition should negotiations with the City be unsuccessful. (ECF No. 365 § XI).

## ARGUMENT

### I. As Prevailing Parties, Plaintiffs Are Entitled To An Award of Reasonable Attorneys' Fees and Costs

Under the ADA and Rehabilitation Act, a court may award reasonable attorneys' fees and costs to a prevailing party. 29 U.S.C. § 794a(b); 42 U.S.C. § 12133. "Prevailing parties" are those who "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978), *abrogated on other grounds by Richardson v. Miller*, 279 F.3d 1 (1st Cir. 2002)); *Estate of Borst v. O'Brien*, 979 F.2d 511, 515 (7th Cir. 1992). "Congress enacted such fee-shifting statutes to encourage lawyers to take meritorious cases and thereby promote private enforcement of the law." *Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363, 366 (7th Cir. 2000); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010) (noting fee-shifting statutes ensure "federal rights are adequately enforced").

Here, the Court already determined that Plaintiffs are the "prevailing parties . . . entitled to reasonable attorneys' fees, costs and expenses for work performed in connection with this litigation," (ECF No. 365 at 11), and the City does not object to Plaintiffs' requested costs and expenses. Young Decl. ¶ 36. Thus, the only dispute remaining is the amount of attorneys' fees Plaintiffs are entitled to recover.

### II. The Requested Attorneys' Fees are Reasonable

Plaintiffs seek $5,053,558 in attorneys' fees: (i) $2,054,673 for 3,206.21 hours spent on this matter by Proskauer, and (ii) $2,998,885 in fees for 4,208.8 hours spent on this matter by

DRA. As set forth below, the requested fees are reasonable, taking into account counsel's billing practices and prevailing market rates, the complexity of the claims involved, the protracted nature of the litigation, and the excellent relief obtained.

**A. The Rates Requested Are Reasonable**

A reasonable fee award is calculated using the lodestar method—that is, multiplying reasonable hourly rates by the reasonable amount of time expended. *Robinson v. City of Harvey*, 489 F.3d 864, 872 (7th Cir. 2007) ("An award of the originally calculated lodestar amount is presumptively reasonable, and it is the City's burden to convince us that a lower rate is *required*.") (emphasis in original) (internal citations omitted). A reasonable hourly rate is one that is "derived from the market rate for the services rendered." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)) (internal quotation marks omitted). An attorney's actual billing rate is presumptively reasonable. *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993). Where attorneys do not bill their clients, such as when services are provided pro bono or as part of a contingent fee arrangement, market rates are established with evidence of "the rate charged by lawyers in the community of 'reasonably comparable skill, experience, and reputation.'" *People Who Care v. Rockford Bd. of Educ. School Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). These rates may be adjusted based on a variety of other factors, including, but not limited to, the time and labor required, the novelty and complexity of the case, the results obtained, and awards in similar cases. *Id.* at 1310 & n.1.

Current rates (rather than historical rates) are appropriate to account for delays in payment between when the work was performed and when the fees are reimbursed. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283 (1989); *see Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 255

n.5 (7th Cir. 1988) (noting Seventh Circuit practice to use current rates to compensate counsel for delay in payment).

### 1. Proskauer Rose LLP

Here, instead of seeking the standard rates Proskauer charges its paying clients, Proskauer seeks attorneys' fees using the rates set forth in the "Laffey Matrix"—a schedule of prevailing hourly rates based on years of experience that is cited by many courts throughout the country, including in this district. *See generally Pickett*, 664 F.3d at 649–51 (citing cases). Proskauer is an internationally recognized law firm that specializes in, among other areas, complex and high-stakes litigation. Young Decl. ¶ 1. As demonstrated in the table below, the requested rates are in many cases less than half the standard rates Proskauer charges its clients for the attorneys and staff who worked on this matter. *Id.* at ¶¶ 20–21, 24.

| Name | Law School Graduation | Standard Rate | Requested Rate (Laffey Matrix) |
|---|---|---|---|
| Alvarez, Ray | 2023 | $1,045 | $473 |
| Antoon, Isaac L. | Associate Director of eDiscovery | $625 | $258 |
| Cook, Alyssa M. | 2021 | $1,075 | $581 |
| Kelly, Timothy L. | 2019 | $970 | $581 |
| Morris, Ren | 2018 | $907 | $581 |
| Petrov, Natasha B. | Paralegal | $530 | $258 |
| Smith-Banks, Shanice Z. | 2020 | $850 | $581 |
| Telman, Nigel F. | 1993 | $2,275 | $1,141 |
| Treece, Dakota D. | 2020 | $1,235 | $581 |
| Young, Edward C. | 2012 | $1,665 | $948 |

Proskauer's requested rates are consistent with rates charged in the Chicago area by firms of similar size and reputation, *see* Declaration of Daniel L. Brown ("Brown Decl.") (attached hereto as **Exhibit C**) ¶¶ 21–22, and as discussed below, by civil rights attorneys in the Chicago area. Indeed, courts have awarded comparable hourly rates in matters where firms of Proskauer's size and reputation have served as co-counsel with DRA. *See, e.g.*, *Bloom v. City of San Diego*,

No. 17-cv-02324, 2024 WL 4495512, at *6–8 (S.D. Cal. Oct. 14, 2024) (approving hourly rates for senior attorneys at Fish & Richardson as high as $1,250); *Navarro v. Mountain View*, No. 5:21-cv-05381, ECF No. 137 (N.D. Cal. Feb. 28, 2023) (approving hourly rates for attorneys at King & Spalding as high as $1,125) (Weisberg Decl. Ex. 3).

### 2. Disability Rights Advocates

DRA also seeks an award of fees for their work in connection with this matter and requests the following hourly rates, which are consistent with the rates of lawyers in the community of reasonably comparable skill, experience, and reputation.

| Name | Law School Graduation | Requested Rate |
|---|---|---|
| Atkinson, Torie | 2015 | $690 |
| Brandt-Young, Christina | 2002 | $960 |
| Caiola, Michelle | 1994 | $1,040 |
| Kolic, Jelena | 2012 | $785 |
| Mastrorilli, Vera | Paralegal | $280 |
| Reichman, Madeleine | 2017 | $620 |
| Seaborn, Stuart | 1998 | $1,075 |
| Tevah, Shira | 2015 | $690 |
| Trainor, Andrew | Supervising Paralegal | $300 |
| Weisberg, Rachel | 2008 | $850 |

DRA is one of the leading public interest disability rights firms in the country and the only public interest law firm in Chicago focused exclusively on high-impact disability rights litigation. Weisberg Decl. ¶ 15. For over thirty years, DRA has served as lead counsel in hundreds of disability rights class actions nationwide, reaching historic and precedent-setting cases and settlements, and benefiting people with disabilities across the country. *Id.* at ¶ 13. DRA, which does not collect a fee from its clients, pursues high-impact litigation in cases that no one else may be willing to take on. *Id.* at ¶¶ 12, 20–21. When successful, DRA relies on prevailing fee awards to reimburse it for fees and expenses. *Id.* at ¶ 19.

DRA's rates are comparable to those charged by civil rights attorneys in the Chicago area. Indeed, declarations from plaintiffs' attorneys practicing civil rights and employment law support

rates ranging from $450 per hour for junior attorneys to $1,200 per hour for senior attorneys. Declaration of Sarah Grady (attached hereto as **Exhibit D**) ¶¶ 9–10; Declaration of Laura R. Feldman (attached hereto as **Exhibit E**) ¶¶ 14–16.

In determining the appropriate hourly rate, courts must look not only to the rates charged by or awarded to other civil rights attorneys and non-profit organizations, but also to the rates that private attorneys of comparable skill charge or are awarded. *People Who Care*, 90 F.3d at 1310 (noting that if an attorney "maintains a contingent fee or public interest practice, for example[], then the court should look to . . . the rate charged by lawyers in the community of 'reasonably comparable skill, experience, and reputation.'") (quoting *Blum*, 465 U.S. at 895 n.11). This is because "Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization." *Blum*, 465 U.S. at 894. "Congress made clear that it intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and *not be reduced because the rights involved may be nonpecuniary in nature*." *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) (alteration and emphasis in original) (internal quotation marks omitted).

DRA's cases generally, and this litigation in particular, are just as complex as cases traditionally handled by private attorneys. *See* Brown Decl. ¶¶ 4, 8, 17–18, Young Decl. ¶¶ 9–10. Yet, DRA seeks rates substantially lower than those charged by private Chicago-area attorneys. *See* Brown Decl. ¶¶ 21–23 (hourly rates ranging well over $1,000 for attorneys and $545 for paralegals); Young Decl. ¶¶ 20, 24 (hourly rates ranging from $850 to $2,275 for attorneys and $530 for paralegals). DRA's rates are well below those reported by comparable attorneys in the 2022 Real Rate Report, even before adjusting for inflation, and in almost all cases substantially

lower than the applicable rate in the Laffey Matrix. Weisberg Decl. ¶¶ 28–33 (comparing specific DRA billing rates to rates from the Laffey Matrix and 2022 Real Rate Report).

DRA has successfully litigated hundreds of disability rights class action and impact cases across the country. Weisberg Decl. ¶ 13. In recognition of this skill and experience, courts routinely approve DRA's rates in comparable matters. *See, e.g., Bloom*, 2024 WL 4495512, at *6–8 (awarding DRA 2024 hourly rates as high as $1,050); Weisberg Decl. ¶ 26 (collecting cases).[3] This is true, in large part, because DRA's attorneys are highly skilled and experienced in complex, class action, and civil rights litigation. Weisberg Decl. ¶¶ 4–10, 18, 52-61 (describing credentials of DRA professionals); Brown Decl. ¶¶ 5, 13; Young Decl. ¶¶ 27–28.

Finally, DRA's rates are in line with those awarded by other courts in this district. That is especially the case when these awards are adjusted for inflation. *See, e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund v. Event Prods., Inc.*, No. 21-cv-5695, 2023 WL 3763543, at *7 (N.D. Ill. June 1, 2023) (applying hourly rates of $975 for partners and $575 for junior attorneys[4]); *Rysewyk v. Sears Holdings Corp.*, No.15-CV-4519, ECF Nos. 211 (motion stating rates), 215

---

[3] *See also Senior & Disability Action v. San Francisco Bay Area Rapid Transit Dist.*, No. 3:17-cv-01876-LB, ECF No. 156, at 5–6 (N.D. Cal. Apr. 18, 2024) (approving DRA's 2022 rates) (Weisberg Decl. **Ex. 1**); *McCullough v. Cal. Dep't of Developmental Servs.*, No. 3:20-cv-2958-SI, ECF No. 123, at 5–7 (N.D. Cal. Sept. 18, 2023) (approving DRA's 2022 rates) (Weisberg Decl. **Ex. 2**); *Navarro v. City of Mountain View*, 5:21-cv-05381-NC, ECF No. 137, at 5–6 (N.D. Cal. Feb. 28, 2023) (approving DRA's 2022 rates) (Weisberg Decl. **Ex. 3**); *Liberty Res., Inc. v. City of Philadelphia*, No. 2:19-cv-03846-HB, 2023 WL 3204018, at *11 (E.D. Pa. May 1, 2023) (approving DRA's 2021 rates); *Roque v. Seattle Hous. Auth.*, No. 2:20-cv-00658-JRC, 2021 WL 9649847, at *3 (W.D. Wash. Sept. 28, 2021) (approving DRA's 2021 rates); *T.G. v. Kern Cnty.*, No. 1:18-cv-00257-JLT, 2020 WL 3035199, at *22 (E.D. Cal. June 5, 2020) (approving DRA's 2020 rates); *Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC*, No. 18-cv-06012-JSW, 2020 WL 10505223, at *2 (N.D. Cal. May 22, 2020) (approving DRA's 2020 rates); *Adam X. v. N.J. Dep't of Corr.*, No. 3:17-cv-00188-FLW- LHG, 2022 WL 621089, at *11 (D.N.J. Mar. 3, 2022) (approving DRA's 2020 rates).

[4] Adjusted for inflation, the hourly rates are $1,031 for partners and $608 for junior attorneys. *See* Federal Reserve Bank of Minneapolis, Inflation Calculator, https://www.minneapolisfed.org/about-us/monetary-policy/inflation-calculator. Inflation calculations in this brief are derived from the same tool and keyed to 2025.

(order approving rates) (N.D. Ill. 2019) (approving hourly rates ranging from $795-$900 for managing partner, $685-$750 for partner, $535-$675 for senior associate; $330-$485 for associate, and $225-$295 for paralegal[5]) (Weisberg Decl. **Ex. 4**); *Cowen v. Lenny & Larry's, Inc.*, No. 1:17-CV-01530, ECF No. 109 (motion stating rates), 2019 WL 10892150 (order approving rates), at *2 (N.D. Ill. May 2, 2019) (finding hourly rates "reasonable" and equal to or less than others awarded by courts in this Circuit, including $650-$900 for managing partner, $750 for partner, $725-$864 for counsel, $685-$717 for senior associate, $340-$550 for associate, $275 for law clerk, and $196-$275 for paralegal[6]) (Weisberg Decl. **Ex. 5**); *Kurgan v. Chiro One Wellness Ctrs., LLC*, No. 1:10-cv-01899, 2015 WL 1850599, at *3–4 (N.D. Ill. Apr. 21, 2015) (approving hourly rates in Fair Labor Standards Act matter for partners ranging from $500 to $600[7]).

### B. The Time Expended Was Reasonable

Where a prevailing party has achieved excellent results, its "attorney[s] should recover a fully compensatory fee," and "[n]ormally this will encompass all hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Civil rights "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee." *Id.* Indeed, "[i]f the winning counsel had taken less

[5] Adjusted for inflation, these numbers are as high as $1,134 for managing partners.

[6] Adjusted for inflation, these hourly rates range from $819-$1,134 for managing partner, $945 for partner, $913-$1,089 for counsel, $863-$903 for senior associate, $428-$693 for associate, $346 for law clerk, and $247-$346 for paralegal.

[7] Adjusted for inflation, the hourly rates range from $679 to $815.

time, he might not be a position to ask for attorneys' fees as the prevailing party's representative." *Mohr v. Chicago Sch. Reform Bd. of Trustees of Bd. of Educ. of the City of Chicago*, 194 F. Supp. 2d 786, 789 (N.D. Ill. 2002).

Here, Plaintiffs seek to recover fees for 7,412.10 hours of work performed—3,206.3 hours incurred by Proskauer personnel and 4,208.8 hours by DRA. To account for potential duplication or inefficiencies, Plaintiffs' requested hours have been reduced significantly from the actual time expended on this matter, the result of which is a cumulative reduction in fees of approximately $1 million. *See* Young Decl. ¶¶ 17, 20; Weisberg Decl. ¶¶ 40–43. Proskauer has not only excluded 260.75 hours by eliminating all time incurred by several Proskauer professionals, but has also reduced the remaining 3,562.45 hours by an additional 10%. Young Decl. ¶ 17. Similarly, DRA first eliminated *all* time for 13 timekeepers who billed fewer than 25 hours on this matter, which excluded 105.4 hours of compensable work. Weisberg Decl. ¶ 40. For the ten timekeepers remaining, DRA performed a line-by-line review and eliminated an additional 652.9 hours. *Id.* at ¶¶ 41–43. In total, DRA's lodestar already excludes 758.3 hours of work. *Id.*

The 7,412.10 in hours for which Plaintiffs seek fees are nearly identical to the 7,203.82 hours the City expended on this matter, Young Decl. ¶ 34, and are more than reasonable. Plaintiffs' claims were complex and required extensive discovery and motion practice to compel the City to comply with its discovery obligations, to fend off its dilatory litigation tactics, and to ultimately certify a class, obtain summary judgment, and have the Court impose a remedial order. Plaintiffs' theories in this case were truly novel: at the commencement of this action, only two similar lawsuits had been filed and, at the time, none had proceeded to a ruling on the merits. Weisberg Decl. ¶ 62. Meanwhile, the City's efforts to forestall having to comply with its obligations under federal law followed the traditional playbook of obstruct, delay, and obfuscate.

As discussed, the City refused to meaningfully engage with Plaintiffs to avoid motion practice on class certification, the merits, or an appropriate remedy, all the while dragging its feet in discovery. While it was the City's prerogative to litigate the case aggressively, it now has an obligation to pay for Plaintiffs' reasonable fees incurred in responding to the City's strategy. *See Rivera*, 477 U.S. at 580 n.11 ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.").

The City's principal objection to the claimed hours—that Plaintiffs' counsel's efforts were duplicative or otherwise unnecessary given the intervention of the United States—is frivolous. The United States only intervened in this case in April 2021, well into discovery and nearly three years after Plaintiffs began their investigation and eighteen months after Plaintiffs commenced this action. (ECF No. 77). Even after the United States intervened, Plaintiffs' counsel took the lead in discovery, defending nine depositions, deposing six City witnesses, and briefing discovery motions. Young Decl. ¶ 13. Plaintiffs, who obtained class certification and had obligations to protect the interests of the class, asserted different claims than the United States and successfully secured a court order finding that the City violated its obligation under the ADA to ensure effective communication and provide reasonable accommodations as a matter of law. (ECF No. 248).

Moreover, the intervention of the United States, which had no obligations to the certified class, did not absolve Plaintiffs' counsel from litigating this matter to conclusion. Even when the United States spearheaded a particular task, such as expert discovery or depositions during the remedial stage of litigation, Plaintiffs' counsel participated actively, reviewing the United States' deposition outlines, contributing deposition questions, consulting during deposition breaks, and frequently asking additional follow-up questions. Young Decl. ¶¶ 14–15. To the extent the City challenges other aspects of the claimed hours, Plaintiffs note that at no point during the meet-

and-confer process did the City identify a single specific time entry that it believed to be unreasonable. Young Decl. ¶ 35.

Finally, Plaintiffs note that their total fee demand is a tiny fraction of the value the City has placed (*see* sealed ECF No. 290 at 12) on the relief obtained by the efforts of Plaintiffs' counsel in this matter. This percentage compares favorably with common fund class action fee awards, which are typically considerably higher. *In re Fed. Nat'l Mortg. Ass'n Sec.*, 4 F. Supp. 3d 94, 111 (D.D.C. 2013) ("Both nationally and in our Circuit, a majority of common fund class action fee awards fall between twenty and thirty percent.") (internal quotation marks omitted); *In re Synthroid Mkg. Litig.*, 325 F.3d 974, 980 (7th Cir. 2003) (granting fees of 19.9% and 22% of class fund in a multi-million dollar recovery); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F.Supp.3d 781, 804 (N.D. Ill. 2015) (granting fees of 19.97% of class fund in multi-million dollar recovery).

### C. Fees for Preparing This Motion

Plaintiffs' fee request includes all work performed by DRA as of May 28, 2025, and by Proskauer as of June 12, 2025. Plaintiffs intend to submit a supplemental fee petition for the time spent briefing this motion, which is compensable. *See Spegon v. Cath. Bishop of Chicago*, 175 F.3d 544, 554 (7th Cir. 1999). In accordance with Local Rule 54.3(e) and to avoid over-burdening the Court with successive fee petitions, Plaintiffs will petition for this time as part of their anticipated petition to recover for fees incurred "monitoring or enforcing" the City's implementation obligations.

## III. Plaintiffs' Costs and Expenses are Reasonable and Undisputed by the City

Costs actually incurred are presumptively reasonable. *Montanez v. Simon*, 755 F.3d 547, 557 (7th Cir. 2014) (finding a "strong presumption that the prevailing party will be awarded those costs of litigation"). The Court has discretion in allowing, disallowing, or reducing costs,

but must have a valid reason for doing so. *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 945 (7th Cir. 1997) ("The presumption in favor of awarding costs to the prevailing party is difficult to overcome, and the district court's discretion is narrowly confined—the court must award costs unless it states good reasons for denying them.").

Here, Plaintiffs seek $247,159.77 in costs and expenses. Young Decl. ¶ 25. Each of the below costs and expenses was actually incurred and paid by Proskauer and not reimbursed by any third party, and were reasonably incurred in the prosecution of this action.[8] *Id.*

- $88,975.15 for legal research on Westlaw, LexisNexis, and PACER.
- $69,305.65 for a document review platform to host, process, and review the approximately 320,000 pages of documents produced by the City.
- $320 for PacerPro.com, which is a service that automatically forwards to counsel documents filed on the electronic docket, which obviates the often cumbersome process and cost of having law firm personnel manually download these documents at their typical hourly rates.
- $61,007.28 for experts.
- $26,481.69 in court reporter fees for depositions.
- $550 in filing fees for commencing this action and for pro hac vice admission of counsel.
- $520 for service of process.

The City does not dispute the reasonableness of these costs and expenses. *Id.* at ¶ 26.

**<u>CONCLUSION</u>**

For the reasons set forth above, Plaintiffs respectfully request that the Court award them $2,054,673 for 3,206.21 hours spent on this matter by Proskauer, $2,998,885 in fees for 4,208.8 hours spent on this matter by DRA, and $247,159.77 in costs and expenses.

---

[8] DRA accrued $1,395.49 in costs and expenses during the pendency of this litigation for filing fees and travel expenses, yet does not seek recovery. Weisberg Decl. ¶¶ 45–46.

Dated: October 24, 2025

Respectfully submitted,

*/s/ Edward C. Young*

Nigel F. Telman
Edward C. Young
Ramon Alvarez, Jr.
PROSKAUER ROSE LLP
70 West Madison, Suite 3800
Chicago, IL 60602
Phone: (312) 962-3550
Fax: (312) 962-3551
ntelman@proskauer.com
eyoung@proskauer.com
ralvarez@proskauer.com

Madeleine J. Reichman
(*admitted pro hac vice*)
DISABILITY RIGHTS ADVOCATES
655 Third Ave., Suite 2619
New York, NY 10017
Phone: (212) 644-8644
Fax: (212) 644-8636
mreichman@dralegal.org

Rachel M. Weisberg
DISABILITY RIGHTS ADVOCATES
300 South Wacker Drive, 32nd Floor
Chicago, IL 60606
Phone: (312) 217-2363
rweisberg@dralegal.org

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Edward C. Young, one of the attorneys for Plaintiffs, hereby certify that on October 24, 2025, I caused a copy of the foregoing to be served electronically upon all the counsel of record via the Court's ECF System.

*/s/ Edward C. Young*
Edward C. Young