# Exhibit 3

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN COUNCIL OF THE BLIND OF NEW YORK, INC., MICHAEL GOLFO, AND CHRISTINA CURRY, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>-against-<br><br>THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF TRANSPORTATION, ERIC ADAMS, in his official capacity as Mayor of the City of New York, and YDANIS RODRIGUEZ, in his official capacity as Commissioner of the New York City Department of Transportation,<br><br>     Defendants. | No. 18-CV-5792 (PAE) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS**

DISABILITY RIGHTS ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017-5621
Tel: (212) 644-8644
Fax: (212) 644-8636
*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................ 1

II.     FACTS AND HISTORY OF THE LITIGATION ...................................... 3

      A.     Complaint Filing and Finding of Liability.............................................. 3

      B.     Remedy Phase ........................................................................................ 5

      C.     Settlement Efforts .................................................................................. 7

III.    ARGUMENT ............................................................................................. 8

      A.     As the Prevailing Parties in This Action, Plaintiffs Are Entitled to Their Full Reasonable Attorneys' Fees and Costs................................... 8

      B.     All Hours Included in the Adjusted Lodestar Were Reasonably Required to Litigate This Matter............................................................ 9

            1.     Lean Staffing Resulted in Significant Cost Savings. ................................. 9

            2.     Plaintiffs Did Not Overlitigate.................................................... 11

            3.     Defendants Could Have Chosen to Stipulate or Settle. ........................... 12

            4.     Plaintiffs Exercised Considerable Billing Discretion in the Adjusted Lodestar. ................................................................... 13

      C.     The Requested Hourly Rates Are Reasonable Based on Market Rates for Similarly Complex Cases Litigated by Attorneys of Comparable Skill, Experience, and Reputation. ................................... 14

            1.     DRA's Proposed Hourly Rates. .................................................. 14

            2.     Attorneys for Plaintiffs Have Significant Skill and Expertise. .................................................................................. 16

            3.     The Hourly Rates Requested Are in Line With Market Rates.......................................................................................... 18

            4.     DRA's Hourly Rates Are Commensurate with Other Attorneys with Similar Skill and Experience.......................................... 19

            5.     DRA's Hourly Rates Have Been Approved By Other Federal Courts................................................................................. 22

            6.     Case-Specific Considerations Also Support a Full Lodestar Award to Plaintiffs..................................................................... 24

i

D.      Plaintiffs Are Entitled to Their Litigation Costs.................................................... 28

E.      Plaintiffs Are Entitled to Their Fees on Fees......................................................... 29

# TABLE OF AUTHORITIES

## Cases

*Access 4 All, Inc. v. Hi 57 Hotel, LLC*, No. 04-CV-6620-GBD-FM,
2006 WL 196969 (S.D.N.Y. Jan. 26, 2006) ................................................................. 28

*Adam X. v. N.J. Dep't of Corr.*, Civ No. 17-00188 (FLW) (LHG)
(D.N.J. Mar. 3, 2022) ................................................................................................. 23

*Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507 (S.D.N.Y. 2010) .............................. 22

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany
Cty. Bd. of Elections*, 522 F.3d 182 (2d Cir. 2008) ...................................................... 15

*Bailey v. Pataki*, No. 08-CV-8563 (JSR), 2016 WL 3545941
(S.D.N.Y. June 16, 2016) ............................................................................................ 25

*Barbour v. City of White Plains*, 788 F. Supp. 2d 216 (S.D.N.Y. 2011) .................... 12, 15, 21, 29

*Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008) .................................. 27

*Boyce v. Cable Assoc.*, No. 86 Civ. 8957 (RJW),
1990 WL 300887 (S.D.N.Y. Apr. 17, 1990) ............................................................... 29

*Brooklyn Ctr. for Indep. of Disabled v. Bloomberg*, 980 F. Supp. 2d 588
(S.D.N.Y. 2013) .......................................................................................................... 17

*Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transp. Auth.*,
11 F.4th 55 (2d Cir. 2021) .......................................................................................... 17

*Californians for Disability Rights v. Cal. Dep't of Transp.*, No. C 06-5125 SBA
(N.D. Cal. Feb. 1, 2011) ............................................................................................. 24

*Cates v. Trustees of Columbia Univ.*, No. 1:16-CV-06524-GBD,
2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021) ......................................................... 16, 20

*City of Almaty v. Ablyazov*, No. 15CV05345AJNKHP, 2020 WL 5440553
(S.D.N.Y. Sept. 10, 2020) ....................................................................................... 14, 20

*Cmty. Res. For Indep. Living v. Mobility Works of Cal.*, No. 18-CV-06012-JSW,
2020 WL 10505223 (N.D. Cal., May 22, 2020) .......................................................... 23

*Cmtys. Actively Living Indep. & Free v. City & Cnty. of Los Angeles*,
No. 09-cv-00287-CBM-RZ (C.D. Cal. Jun. 10, 2013) ................................................. 24

*Cole v. Cty. of Santa Clara*, No. 16-CV-06594-LHK (N.D. Cal. Mar. 21, 2019) ....................... 23

*Cortes v. Juquila Mexican Cuisine Corp.*, No. 17-CV-3942 (RER),
2021 WL 1193144 (E.D.N.Y. Mar. 29, 2021) ............................................................... 18

*Ctr. for Indep. of Disabled v. Metro. Transp. Auth.*,
184 A.D.3d 197 (N.Y. App. Div. 2020) ....................................................................... 17

*Disabled In Action v. Bd. of Elections*, 752 F.3d 189 (2d Cir. 2014) ........................................... 17

*Disabled in Action v. City of New York*, 437 F. Supp. 3d 298 (S.D.N.Y. 2020) .......................... 17

*Errant Gene Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Research*,
286 F. Supp. 3d 585 (S.D.N.Y. 2018) ........................................................................ 21

*Fox v. Vice*, 563 U.S. 826 (2011) ................................................................................................ 9

*G.F. v. Contra Costa Cty.*, No. 3:13-cv-03667-MEJ (N.D. Cal. Nov. 25, 2015) ......................... 23

*Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998) ................................................................... 14

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ....................................................................... 8, 14, 20

*Hindman LLC v. Mihaly*, No. 21 MISC. 452 (PAE), 2022 WL 19752
(S.D.N.Y. Jan. 3, 2022) ........................................................................................... 24

*Hnot v. Willis Group Holdings Ltd.,* No. 01 Civ. 6558, 2008 WL 1166309
(S.D.N.Y. Apr. 7, 2008) ........................................................................................... 22

*HomeAway.com, Inc. v. City of New York*, No. 18 CIV 7742 (PAE),
2021 WL 791232 (S.D.N.Y. Mar. 1, 2021) ................................................................. 24

*Indep. Project, Inc. v. Ventresca Bros. Constr. Co.*, 397 F. Supp. 3d 482
(S.D.N.Y. 2019) ............................................................................................... 14, 24

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) .................................. 16

*Kreisler v. Second Ave. Diner Corp.*, No. 10 CIV. 7592 RJS, 2013 WL 3965247
(S.D.N.Y. July 31, 2013) ........................................................................................... 14

*Lawton v. Success Acad. of Fort Greene*, No. 15-CV-07058-FB-SMG,
2021 WL 911981 (E.D.N.Y. Mar. 10, 2021) ............................................................... 28

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998) .................................................... 14

*M.F. by & through Ferrer v. New York City Dep't of Educ.*, No. 18-CIV-6109
(NG), 2019 WL 2511874 (E.D.N.Y. June 18, 2019) ...................................................... 18

*Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*,
831 F.2d 407 (2d Cir. 1987) ..................................................................................... 19

iv

*Millea v. Metro-North R.R. Co.*, 658 F.3d 154 (2d Cir. 2011) ...................................................... 8

*Missouri v. Jenkins*, 491 U.S. 274 (1989) .................................................................................... 14

*Morris v. Eversley*, 343 F. Supp. 2d 234 (S.D.N.Y. 2004) ........................................................... 28

*Nat'l Ass'n for Specialty Food Trade, Inc. v. Construct Data Verlag AG*, No. 04
CIV. 2983 DLC/KNF, 2006 WL 5804603 (S.D.N.Y. Dec. 11, 2006) ..................................... 22

*Nat'l Fed'n of the Blind v. Target Corp.*, No. C 06-01802 MHP,
2009 WL 2390261 (N.D. Cal. Aug. 3, 2009) ................................................................... 24, 25

*Nat'l Fed'n of the Blind v. Uber Techs, Inc.*, No. 14-cv-04086-NC
(N.D. Cal. Nov. 8, 2019) ....................................................................................................... 23

*Ochoa v. City of Long Beach*, No. 2:14-cv-04307-DSF-FFM
(C.D. Cal. Oct. 17, 2017) ....................................................................................................... 23

*Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19
(S.D.N.Y. 2016) ...................................................................................................................... 28

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
483 U.S. 711 (1987) ................................................................................................................ 14

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) ............................................................. 8, 9

*Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23 (2d Cir. 1983) ........................................... 14

*Quarantino v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999) ..................................................... 8, 29

*Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance,
LLC*, No. 13-CV-2493 (KBF), 2014 WL 4792082 (S.D.N.Y. Sept. 24, 2014) ...................... 22

*Roque v. Seattle Housing Auth.*, No. 2:20-cv-658-JRC (W.D. Wa. Sept. 28, 2021) .................... 23

*Rozell v. Ross-Holst*, 576 F. Supp. 2d 527 (S.D.N.Y. 2008) ....................................................... 28

*Scharff v. County of Nassau*, No. 10-CV-4208(DRH)(AKT), 2014 WL 2454639
(E.D.N.Y. June 2, 2014) ......................................................................................................... 25

*T.G. v. Kern County*, No. 1:18-CV-00257-JLT (E.D. Cal. June 5, 2020) ..................................... 23

*TufAmerica Inc. v. Diamond*, No. 12-CV-3529 (AJN), 2016 WL 1029553
(S.D.N.Y. Mar. 9, 2016) ......................................................................................................... 21

*U.S. Bank Nat'l Ass'n v. Dexia Real Est. Cap. Markets*, No. 12 CIV. 9412 (PAE),
2016 WL 6996176 (S.D.N.Y. Nov. 30, 2016) ......................................................................... 21

Case 1:18-cv-06205-PAE   Document #302-8   Filed 11/17/25   Page 7 of 37   Page ID #364286

**Statutes**

29 U.S.C. § 794 ............................................................................................................. 1, 8

42 U.S.C. § 12132 ........................................................................................................... 1

42 U.S.C. § 12133 ........................................................................................................... 8

N.Y.C. Admin. Code § 8-130 ....................................................................................... 25

N.Y.C. Admin. Code § 8-502 ................................................................................... 8, 28

**Rules**

Fed. R. Civ. P. 25 ........................................................................................................... 1

**Regulations**

28 C.F.R. § 35.150 ......................................................................................................... 1

## I. INTRODUCTION

Plaintiffs seek to recover their reasonable attorneys' fees and costs from achieving remarkable injunctive relief in this complex class action to remedy New York City's ("the City's") long-standing, systemic failures to make street crossings accessible to people who are blind and low vision. The lengthy opinions and orders from the Court establishing liability and mandating remedial measures for the Class vindicate the rights of individuals with disabilities, and will transform the accessibility of New York City's streetscape and save lives. These orders were the result of extensive factual and legal investigation and contested litigation through the remedy stage, with little governing legal precedent in this context. Relatively few firms and attorneys in New York have the experience and expertise to handle complex disability rights actions like this one, and the landmark result achieved by Plaintiffs' Counsel is extraordinary.

Plaintiffs filed their class-action complaint on June 27, 2018. After three and a half years of litigation, including significant discovery (ECF Nos. 52–55, 57, 60–62, 69), class certification (ECF Nos. 71–76-3, 79, 81), and expert disputes (ECF Nos. 77–78-1, 80), on October 20, 2020, this Court granted in part Plaintiffs' motion for partial summary judgment on liability and held that the City, New York City Department of Transportation ("DOT"), Mayor Eric Adams, and Commissioner Ydanis Rodriguez's[1] (collectively "Defendants") failure to provide crossing information in an accessible format at more than 95% of intersections unlawfully denies blind and low vision pedestrians meaningful access to the City's signalized pedestrian street crossings in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.*, 28 C.F.R. § 35.150 ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* ("Section 504"), and unlawfully excludes blind and low vision pedestrians from the City's

---

[1] Eric Adams is automatically substituted for Defendant Bill De Blasio, and Ydanis Rodriguez is automatically substituted for Defendant Polly Trottenberg. Fed. R. Civ. P. 25(d).

signalized intersections and pedestrian grid, in violation of those statutes and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(4)(a) ("NYCHRL"). Oct. 20, 2020 Op. & Order ("SJ Order"), ECF No. 126, at 66–67.

Following three days of hearing and argument, on December 27, 2021, this Court issued an order and opinion on remedy, Op. & Order ("Remedy Opinion"), ECF No. 194, which was operationalized through a further remedial order negotiated by the parties and signed by the Court on March 18, 2022, Op. & Order ("Final Remedy Order"), ECF No. 208. Like the Remedy Opinion, the Final Remedy Order outlines relief in two phases. In Phase One, Defendants must add Accessible Pedestrian Signals ("APS") to at least 10,000 signalized intersections by 2031—a total of more than 9,000 intersections during the next 10 years.[2] In Phase Two, Defendants must make all signalized intersections accessible by 2036, unless Defendants move to extend that time period. *Id.* Finally, the Court appointed an Independent Monitor to oversee compliance, including prioritization consistent with the priorities set by the Court. *Id.*

As counsel for the prevailing party in this complex, ground-breaking litigation, Plaintiffs' Counsel are entitled to their reasonable fees and costs. This is in line with the paramount purpose of fee-shifting provisions in the ADA and comparable statutes: to encourage competent counsel to undertake and see through to resolution complex cases in the public interest.

Plaintiffs respectfully contend that they are entitled to an adjusted lodestar recovery in the amount of $1,192,315.50 for attorneys' fees through May 31, 2022 ("Adjusted Lodestar"), and $43,636.45 in costs, for a total award of $1,235,951.95. This amount is fair and reasonable,

---

[2] This tranche of intersections includes all outstanding community requests, all Leading Pedestrian Intervals, all Exclusive Pedestrian Phases, and 424 new signals that were installed without APS during the limitations period. Final Remedy Order, ECF No. 208. The Final Remedy Order lays out annual targets for APS installation for each of the first five years of the plan, as well as new requirements for all newly signalized intersections going forward, and for handling future public requests. *Id.*

especially in light of the fact that Plaintiffs' Counsel has already voluntarily adjusted their original lodestar by 522.9 hours, for a total reduction of $258,495.

## II. FACTS AND HISTORY OF THE LITIGATION

### A. <u>Complaint Filing and Finding of Liability</u>

Plaintiffs first sent Defendants a demand letter on March 9, 2018, and attempted to engage in settlement negotiations regarding their claims. Decl. of Torie Atkinson in Supp. of Pls. Mot. for Reasonable Attorneys' Fees and Costs ("Atkinson Decl.") ¶ 13. The parties met on May 16, 2018, but were unable to resolve the issues, and Plaintiffs filed their Complaint on June 27, 2018. Complaint, ECF No. 1; Atkinson Decl. ¶¶ 13–14. The Complaint alleged that Defendants failed to provide accessible street crossings at nearly all signalized intersections in New York City in violation of Title II of the ADA, Section 504, and the NYCHRL. ECF No. 1. Plaintiffs also challenged Defendants' long-standing failure to install APS at all newly signalized intersections and when undergoing renovation and reconstruction projects. *Id.*

Defendants answered the Complaint on September 12, 2018. ECF No. 21. On October 4, 2018, after the Complaint was filed but prior to any significant discovery, Plaintiffs endeavored to engage in settlement negotiations, but the attempt was unsuccessful. Atkinson Decl. ¶ 17.

The parties engaged in discovery. Plaintiffs promptly served written discovery in October 2018 following a Rule 16(f) conference. *Id.* at ¶ 18. Pursuant to this matter's scheduling order, the parties also engaged in a Court-supervised settlement hearing before Judge Barbara Moses. On January 24, 2019, the parties met on their own to discuss settlement, but that meeting was unsuccessful. *Id.* at ¶ 19. The settlement hearing with Judge Moses was held on February 5,

2019.[3] That hearing and subsequent exchange of offers were likewise unsuccessful. *Id*.

Discovery continued, but Plaintiffs did not receive the bulk of responsive written discovery until after the Court ordered Defendants to produce it in March 2019, noting "the apparently slow pace at which discovery has proceed [sic] thus far." ECF No. 57. Defendants produced 201,857 pages of documents (out of a total 243,417 pages produced in the litigation) on April 12, 2019, and April 15, 2019, just weeks shy of the May 7, 2019, scheduled close of discovery. Atkinson Decl. ¶ 22. The parties sought a brief extension of discovery, and Plaintiffs were forced to add additional staff on a short-term basis (Rebecca Serbin, Andrea Kozak-Oxnard, and Emily Seelenfreund) to assist in voluminous document review. ECF No. 64; Atkinson Decl. ¶ 22; Decl. of Stuart Seaborn in Supp. of Pls. Mot. for Reasonable Attorneys' Fees and Costs ("Seaborn Decl.") ¶ 47, n.2. Ms. Atkinson and Mr. Packrone then took the four fact depositions in the case in just 10 days before the close of discovery due to the belated document production. Atkinson Decl. ¶ 22.

Plaintiffs again attempted to engage in settlement negotiations at the close of fact discovery. The parties were again unable to reach agreement. Atkinson Decl. ¶ 24.

Plaintiffs filed a motion for partial summary judgment on October 21, 2019. ECF Nos. 92–98-21. Ultimately, after significant briefing, including Defendants' failed attempt to cross-move for summary judgment nearly five months late,[4] Defendants conceded liability at argument:

---

[3] Plaintiffs attended the settlement conference with clients with decision-making authority and made multiple different offers of settlement. Atkinson Decl. ¶ 19. Defendants "failed to send a decision-maker with the necessary authority to the settlement conference … rendering defendants unable to negotiate beyond the position they communicated to plaintiffs and to the Court prior to the conference[.]" ECF No. 51. As a result, Judge Moses ordered Defendants to reimburse Plaintiffs' out-of-pocket costs for attending the mediation, and ordered Defendants to make a good faith counteroffer and engage in additional settlement efforts.

[4] The deadline to request to move for summary judgment was July 12, 2019, and this Court held a pre-motion conference on summary judgment on July 22, 2019. At that time, the Court noted, "I am not hearing a defense

> THE COURT: I mean it sounds like the -- is the Hydra [New York City] admitting that there is a lack of meaningful access in some parts of the city?
>
> MS. KOPLIK: That, that is, that is probably accurate, yes.

October 2, 2020, Oral Argument Transcript ("SJ Tr.") at 44. They also conceded that no effort was made to perfect an undue hardship defense, and admitted that some alterations they had performed at City intersections triggered the legal obligation for APS, which they had not installed. SJ Tr. at 50–51, 59–61.

This Court granted Plaintiffs' motion in large part on October 20, 2020. ECF No. 126 at 2 (finding that "on the undisputed facts . . . the near-total absence at the City's signalized intersections of crossing information accessible to blind and low-vision pedestrians denies such persons meaningful access to these intersections, in violation of all three statutes cited above").

## B.     Remedy Phase

Following the finding of liability, the parties sought and received a 60-day stay to engage in settlement negotiations. ECF No. 130. These efforts, like the prior efforts, were unsuccessful. Atkinson Decl. ¶ 33.

Plaintiffs were open about their interest in settlement and the degree of flexibility Plaintiffs would afford Defendants in crafting a remedy, as laid out for the Court in letters submitted on October 30, 2020 (ECF No. 130), and December 23, 2020 (ECF No. 134). As stated in Plaintiffs' October 30 letter, Plaintiffs sought that Defendants "prepare a transition plan to remedy that lack of [meaningful] access over a reasonable period of time." ECF No. 130 at 1.

---

motion for summary judgment," PMC Tr. at 16:9–10. Nevertheless, Defendants sought to cross-move on summary judgment on November 18, 2019, midway through briefing Plaintiffs' motion, forcing Plaintiffs to object on timeliness and prejudice grounds. ECF Nos. 99–100. Defendants' request was ultimately denied. ECF No. 101.

Similarly, Plaintiffs' December 23, 2020, letter proposed a remedy consisting of a transition period of 10 years:

> Plaintiffs have offered numerous solutions to financial and operational challenges that Defendants have identified. For example, Plaintiffs are willing to defer implementation of any remedial plan until the COVID-19 pandemic is over and its fiscal restraints removed . . . Plaintiffs are willing to consider any and all creative solutions to enable members of the Class to safely and independently access NYC intersections as quickly as practicable.

ECF No. 134 at 1-2.

Following the failure to settle after the Court's finding of liability, the Court held a conference on January 15, 2021, asking Defendants "what level of attention this matter is now getting within the City and the Mayor's office[.]" Jan. 15, 2021, Court Conference Transcript ("1/15/21 Tr."), at 32. As the Court noted, its question was "really . . . more in the nature of strong guidance," advising the City to "work out a resolution with the plaintiffs." 1/15/21 Tr. at 32–33. While Plaintiffs were open to continued settlement negotiations, Defendants represented that no further settlement efforts, even with a third-party mediator, would be helpful because there was "an unbridgeable gap, quite honestly" between the parties. *Id.* at 36.[5]

Plaintiffs' Counsel streamlined the remedy phase as much as possible to reduce costs, increase efficiencies, and work collegially with opposing counsel. In the interests of keeping to the Court's proposed remedial schedule, Plaintiffs offered Defendants an opportunity to depose Plaintiffs' successor expert, Dr. Eugene Bourquin, even though Defendants had earlier chosen not to depose Plaintiffs' expert, Janet Barlow, during the remedial phase discovery period. Atkinson Decl. ¶ 39. Significantly, while the Court left open the ability of Plaintiffs to conduct

---

[5] The United States submitted a Statement of Interest supporting Plaintiffs' proposed remedy and a Brief Outlining the United States of America's Remedial Recommendations. ECF Nos. 150, 178. The United States also argued at the Remedy Hearing that Defendants failed to meet their burden of undue hardship. November 9, 2021, Hearing Transcript ("11/9/21 Tr.") at 455–59.

supplemental discovery and litigate liability on open claims related to certain alterations, Plaintiffs chose to forgo such burdensome and time-consuming discovery, despite the potential for additional liability rulings, in the interest of a broader remedial plan that could achieve many of the same goals more quickly. ECF No. 134 at 2; 1/15/21 Tr. at 3–13; Atkinson Decl. ¶ 40. Plaintiffs ultimately voluntarily dismissed those claims at the evidentiary hearing, avoiding additional motion practice. October 29, 2021, Hearing Transcript ("10/29/21 Tr.") at 373.

Similarly, Plaintiffs adapted their proposed remedial plan at multiple points in response to operational challenges raised by Defendants, in the interest of coming together to narrow the disputes and reach a pragmatic resolution. Atkinson Decl. ¶ 41. For example, Plaintiffs withdrew their original suggestion of temporarily outfitting existing poles with APS when Defendants explained that such a program would be unworkable. *Id.* Similarly, Plaintiffs opted not to pursue a proposal to integrate APS installation into curb cut construction after Defendants claimed that such a plan would not actually take advantage of operational efficiencies that other cities have successfully utilized. *Id.* Further, in an effort to acknowledge and address concerns raised by Defendants, Plaintiffs proposed a prioritization heuristic for evaluating APS, rather than rigid adherence to DOT's existing Prioritization Tool. *Id.* Plaintiffs also recommended at the hearing that a ramp-up period may be appropriate to address Defendants' operational challenges. *Id.*

## C. **Settlement Efforts**

As described above, Plaintiffs made every effort to resolve this case without litigation, and continued to push for a negotiated settlement at each stage in the litigation, all the way to the Court's remedial ruling. Plaintiffs attempted to settle the case in May 2018, before filing; in October 2018, shortly after the Rule 26(f) conference; before, during, and following a settlement conference with Judge Moses in February 2019; prior to filing dispositive motions in July 2019; and following the liability ruling in December 2020 and January 2021. Atkinson Decl. ¶¶ 13, 17,

7

19, 24, 33. Ultimately, the flexible framework Plaintiffs suggested for settlement in December 2020 is largely similar to the remedy that this Court ordered a year later, as laid out in the March 18, 2022, Final Remedy Order.

III.    ARGUMENT

A.    **As the Prevailing Parties in This Action, Plaintiffs Are Entitled to Their Full Reasonable Attorneys' Fees and Costs.**

Plaintiffs are entitled to their reasonable attorneys' fees and costs under applicable fee-shifting provisions of Section 504, the ADA, and the NYCHRL. *See* 29 U.S.C. § 794a(b); 42 U.S.C. § 12133; N.Y.C. Admin. Code § 8-502(g). A plaintiff is a "prevailing party" when he or she prevails on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citation omitted). Where, as here, the plaintiff obtained excellent results, their "attorney should recover a fully compensatory fee" and "[n]ormally this will encompass all hours reasonably expended on the litigation . . . ." *Id.* at 435.

The Supreme Court and this Circuit have held that there is a strong presumption that the lodestar, which consists of "the product of a reasonable hourly rate and the reasonable number of hours required by the case," is a "presumptively reasonable fee." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citation and quotation marks omitted). Congress enacted fee-shifting "in order to ensure that federal rights are adequately enforced." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010); *see also Quarantino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999) ("Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation."). "A 'reasonable' fee is a fee that is sufficient to induce a capable attorney to

8

undertake the representation of a meritorious civil rights case." *Perdue* at 552. A full lodestar supports the preservation of essential civil rights:

> When a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. . . . He therefore should ordinarily recover an attorney's fee from the defendant—the party whose misconduct created the need for legal action. Fee-shifting in such a case at once reimburses a plaintiff for what it cos[t] [him] to vindicate [civil] rights, and holds to account a violator of federal law.

*Fox v. Vice*, 563 U.S. 826, 833 (2011) (internal citations and quotations omitted). Here, Plaintiffs' rights were fully vindicated and a violator of federal and local law has been fully held to account. There should be no question that Plaintiffs' counsel are entitled to a full recovery.

**B.** **All Hours Included in the Adjusted Lodestar Were Reasonably Required to Litigate This Matter.**

This is not a case where Plaintiffs' attorneys needlessly ran up the bill. The case was leanly staffed throughout, and the bulk of work was done by the lowest hourly billers. Plaintiffs took numerous steps to streamline and minimize litigation costs, by seeking stipulations and minimizing discovery and motion practice, and ultimately Defendants had the most control over hours spent prosecuting this case, because they declined to settle, or even to stipulate to liability despite conceding liability at partial summary judgment. Finally, Plaintiffs' Adjusted Lodestar represents considerable billing discretion.

1. Lean Staffing Resulted in Significant Cost Savings.

With respect to staffing, Plaintiffs' counsel staffed this case sparely, with no more than two staff attorneys at a time. Seaborn Decl. ¶¶ 28, 45–46. Ms. Atkinson (2015, Harvard Law School) was the consistent attorney assigned from shortly after filing to the present. *Id.* at ¶ 46. Jelena Kolic (2012, University of Chicago School of Law) was assigned through early discovery;

9

then Seth Packrone (2015, Harvard Law School) from depositions through summary judgment; and finally Chloe Holzman (2011, University of Michigan Law School) for remedy. *Id.* at ¶ 46.

The vast majority of work (more than 1,200 hours) on this case was done by Ms. Atkinson. *Id.* at ¶ 47. Apart from additional attorneys assigned to the case for short periods solely to assist with document review and cite-checking, Ms. Atkinson was the most junior and had the lowest hourly rate of all the attorneys staffed on this case, which resulted in significant cost savings and efficiencies and a comparatively low lodestar. *Id.* The supervisors with the highest billing rates (Mr. Seaborn and Ms. Caiola) account for only 132.1 out of 2,559.9 total hours over a period of nearly four years—only 5%. Seaborn Decl. ¶ 46.

The early investigation was handled by several senior Disability Rights Advocates ("DRA") attorneys, two of whom Plaintiffs' Counsel have used billing discretion to "no charge": Sid Wolinsky (1961, Yale Law School), DRA's highest biller; and Maia Goodell (2001, University of Michigan Law School). *Id.* at ¶ 45. Plaintiffs are therefore seeking only reasonable fees for the work of then-Senior Staff Attorney Christina Brandt-Young (2002, University of Michigan Law School), who did the bulk of the investigation and complaint-drafting, and then-Managing Director of Litigation, Michelle Caiola (1994, University of Iowa College of Law), who supervised the case from investigation through 2020. *Id.* Stuart Seaborn (1998, UCLA School of Law), also Managing Director of Litigation, took over supervision of the case following Ms. Caiola's departure. *Id.* at 46.

As discussed above, Rebecca Serbin (2013, University of Pennsylvania Law School), Andrea Kozak-Oxnard (2017, Columbia Law School), and Emily Seelenfreund (2017, Harvard Law School) assisted in short-term cite-checking and voluminous document review prior to

10

depositions, and their time was necessary because of the belated nature of the production in advance of depositions and the close of discovery. Atkinson Decl. ¶ 22; Seaborn Decl. ¶ 47, n.2.

At all times, one litigation assistant or paralegal was assigned to this case, with others assisting depending on workload. Seaborn Decl. ¶ 57. Plaintiffs seek reasonable attorneys' fees for the following assistants or paralegals over the course of the litigation: Andrew Trainor, Janet Mukherjee, Kimberly Anderson, Rebecca Klein, Rebecca Moser, and Vera Mastrorilli. *Id.* In an exercise of billing discretion, Plaintiffs' counsel have "no charged" 75.7 hours of that work, largely time spent making documents screen reader or large-print accessible to blind and low vision clients and class members. *Id.* at ¶ 70. Plaintiffs' counsel have also "no charged" 60.5 hours of tasks by other paralegals. *Id.* With total paralegal and litigation assistant hours totaling 434.8, this is a reduction of 136.2 hours, or 31% of the overall paralegal lodestar. *Id.*

2. Plaintiffs Did Not Overlitigate.

Every action taken in this litigation was necessary for the outcome Plaintiffs achieved. Plaintiffs opposed lengthy extensions sought by Defendants that would have needlessly prolonged the litigation, and this Court recognized that Plaintiffs were consistently moving the case forward. ECF Nos. 55, 85; Pre-Motion Conference Transcript ("PMC Tr.") at 4–6; Atkinson Decl. ¶ 20. Plaintiffs noticed only three depositions: a Rule 30(b)(6) corporate deposition of the DOT (for which Defendants produced two witnesses), and two fact witnesses. Atkinson Decl. ¶ 20. Plaintiffs sought stipulation of facts and issues wherever and whenever possible, including seeking stipulation as to class certification, ECF No. 81, and in advance of the remedial hearing. *Id.* at ¶¶ 23, 39. Plaintiffs also did not needlessly contest discovery requests from Defendants. For example, rather than engage in disputes requiring the Court's intervention, Plaintiffs acquiesced to Defendants' discovery requests whenever possible, including conducting a reasonable search for Plaintiffs' taxi and Uber receipts, producing more than 700 pages of

11

research papers and hand-scanned book chapters authored by Ms. Barlow, and attempting to obtain discovery documents from an unrelated litigation not in Ms. Barlow's custody or control. *Id.* at ¶ 21. Plaintiffs even proactively offered Dr. Bourquin for deposition, though Defendants had never deposed Ms. Barlow on remedy. *Id.* at ¶ 39.

Significantly, Plaintiffs chose to forego burdensome and time-consuming discovery on their remaining open renovations claims, despite the potential for additional liability rulings, in the interest of a broader remedial plan that could achieve many of the same goals. ECF No. 134 at 2; 1/15/21 Tr. at 3–13; Atkinson Decl. ¶ 40. Plaintiffs ultimately voluntarily dismissed those claims at this matter's evidentiary hearing, 10/29/21 Tr. at 373. In short, Plaintiffs did what was necessary—and only what was necessary—to achieve a remedial plan that would provide the Class with meaningful access to the City's pedestrian grid on a reasonable timeline.

3.     Defendants Could Have Chosen to Stipulate or Settle.

Much of the time and resources expended in this case could have been avoided if Defendants had more carefully engaged with Plaintiffs' allegations. "Defendants 'could have avoided liability for the bulk of the attorney's fees for which they now find themselves liable by making a reasonable settlement offer in a timely manner.'" *Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 224–25 (S.D.N.Y. 2011), *aff'd,* 700 F.3d 631 (2d Cir. 2012) (quoting *City of Riverside v. Rivera,* 477 U.S. 561, 580 n.11 (1986)).

Defendants appeared to invest little time or attention in investigating Plaintiffs' claims. Had they more thoroughly investigated the claims, they would have seen that the proof for their defenses did not exist. For example, Defendants did not depose a single Plaintiff; served only four interrogatories, all seeking itemization of costs despite the absence of any demands for damages; and at the pre-motion conference for summary judgment, were unable to answer basic questions about how many intersections they conceded to on liability. PMC Tr. at 24; Atkinson

12

Decl. ¶ 31. When Plaintiffs moved for partial summary judgment, Defendants reflexively opposed and attempted to cross-move but then mustered no genuine argument against liability, and essentially conceded liability at oral argument. Atkinson Decl. ¶ 26; SJ Tr. at 44.

The time, resources, and efforts over nearly four years of litigation could have been dramatically reduced had Defendants seriously engaged with the prospect of settlement, or stipulated to liability and agreed to proceed directly to remedy.

4.     Plaintiffs Exercised Considerable Billing Discretion in the Adjusted Lodestar.

The Adjusted Lodestar presented in this Motion reflects extensive billing discretion. DRA's request excludes 522.9 hours of time, representing 17% of the overall time spent litigating this case (3,082.8 hours). Seaborn Decl. ¶ 34. As discussed above, Plaintiffs' Counsel entirely no-charged 85.3 hours from Mr. Wolinsky, and 29.7 hours from Ms. Goodell, two of DRA's highest billers. *Id.* at ¶¶ 45, 69. Additionally, DRA no-charged 136.2 hours in paralegal time, the entirely of work done by fellowship attorneys (10 hours), and the entirety of work done by summer associates (115.6 hours). *Id.* at ¶¶ 70–71.

Additionally, DRA has utilized billing discretion to voluntarily reduce time spent on, among other things: much of its early investigation; transition meetings; supervisors conferring with each other; organizing files or printing documents for convenience; oral argument moots; arranging accommodations for Plaintiffs, including securing interpreters and making documents accessible to screen readers or with large print; an early summary judgment motion on an issue ultimately conceded; and work related to the challenge of Defendants' demonstrative at the remedy hearing, which was ultimately accepted by the Court. Seaborn Decl. ¶ 72.

13

**C.**    **The Requested Hourly Rates Are Reasonable Based on Market Rates for Similarly Complex Cases Litigated by Attorneys of Comparable Skill, Experience, and Reputation.**

Plaintiffs' Counsel's hourly rates are reasonable in relation to the rates charged by New York attorneys with commensurate skill, experience, and reputation handling complex federal litigation, among the factors a Court must consider in evaluating fee rates. *Hensley*, 461 U.S. at 430 n.3. The local rates are normally based on "the district in which the court sits," *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983), and are determined using current rates (when attorneys file the motion for fees), *not* by rates in effect at the time the services were rendered. *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989)).[6] It is also essential to ensure that Plaintiffs' Counsel's rates are commensurate with inflation, and hourly rates should increase to reflect rising costs and not be beholden to prior decisions from years ago. *Kreisler v. Second Ave. Diner Corp.*, No. 10 CIV. 7592 RJS, 2013 WL 3965247, at \*2 (S.D.N.Y. July 31, 2013) (increasing hourly rates from historical cases "because the cases cited were decided five to eight years ago, the Court finds that, in light of ordinary inflation" a higher hourly rate was reasonable).[7]

1.    DRA's Proposed Hourly Rates.

DRA seeks the following hourly rates in this motion:

---

[6] Counsel have received no compensation over the life of this case. The use of current hourly rates acknowledges that "compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed . . . ," *Jenkins*, 491 U.S. at 283–84, and also serves to recognize that the attorneys were not paid for their services throughout the duration of the lawsuit. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716 (1987); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998).

[7] *See also Indep. Project, Inc. v. Ventresca Bros. Constr. Co.*, 397 F. Supp. 3d 482, 496 (S.D.N.Y. 2019) (increasing hourly rate from $350 to $400 "taking into account all relevant considerations and inflation"); *City of Almaty v. Ablyazov*, No. 15CV05345AJNKHP, 2020 WL 5440553, at \*4 (S.D.N.Y. Sept. 10, 2020) (utilizing the Bureau of Labor Statistics CPI inflation calculator and noting that, in comparison to the relevant annual inflation rate, a 7% rate increase over two years was reasonable).

14

| DRA Attorneys & Staff | Law School Graduation Date | Reasonable Hourly Rate |
|---|---|---|
| Michelle Caiola | 1994 | $835 |
| Stuart Seaborn | 1998 | $815 |
| Christina Brandt-Young | 2002 | $740 |
| Chloe Holzman | 2011 | $530 |
| Jelena Kolic | 2012 | $500 |
| Rebecca Serbin | 2013 | $475 |
| Torie Atkinson | 2015 | $445 |
| Seth Packrone | 2015 | $445 |
| Andrea Kozak-Oxnard | 2017 | $385 |
| Emily Seelenfreund | 2017 | $385 |
| Paralegals | | $275 |
| Litigation Assistants | | $230 |

The hourly rates proposed are reasonable based on the experience of counsel involved, evidence submitted about market rates in this district, and statistical reports showing that these rates are within typical ranges. *Barbour*, 788 F. Supp. 2d at 225 (awarding rates based on attorney's credentials and experience, "declarations from other experienced civil rights litigators who each attest that their hourly rate matches or exceeds" the attorney's requested rate, and "statistical reports indicating that [the rate] is well within the range of hourly rates for attorneys in civil rights cases in the Southern District . . . ."). When considering a reasonable hourly rate, Courts should consider, among other factors, "the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case," and the so-called *Johnson* factors.[8] *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 184, 190 (2d Cir. 2008).

---

[8] Twelve factors to be considered in setting a reasonable fee are laid out in *Johnson v. Georgia Highway Express, Inc.*: 1) "The time and labor required"; 2) "The novelty and difficulty of the questions"; 3) "The skill requisite to

2.      Attorneys for Plaintiffs Have Significant Skill and Expertise.

DRA is a nonprofit law firm generally acknowledged to be one of the leading public interest firms in the country in disability-related legal advocacy and the only nonprofit law firm in New York City that specializes exclusively in class action impact litigation on behalf of people with disabilities. Seaborn Decl. ¶¶ 6, 8–12; Outten Decl. ¶¶ 24–27; Brown Decl. ¶¶ 11–13. DRA has served as lead counsel and class counsel in hundreds of disability civil rights class actions across the country, and has expertise in class actions involving the ADA, Section 504, and state and local disability rights laws, in areas such as public transportation, voting access, and emergency preparedness, that have benefited countless persons with disabilities. Seaborn Decl. ¶ 8; Outten Decl. ¶ 25; Brown Decl. ¶ 12. DRA's work in this case is commensurate with other highly skilled complex commercial litigation such as antitrust, intellectual property, and securities matters. Seaborn Decl. ¶¶ 40–44; Brown Decl. ¶ 19.

DRA's clients, including those in this matter, do not pay for DRA's services. Seaborn Decl. ¶ 7. Generally, DRA handles cases in which the client or clients cannot afford to retain a law firm or where other lawyers will not handle the matter. *Id*. DRA assumes great risk in taking on cases purely on contingency, and the hourly rates counsel seeks are commensurate with that risk. Seaborn Decl. ¶¶ 21–22. "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *Cates v. Trustees of Columbia Univ.*, No. 1:16-CV-06524-GBD, 2021 WL 4847890, at *5 (S.D.N.Y. Oct. 18, 2021) (quoting *City of*

---

perform the legal service properly"; 4) "The preclusion of other employment by the attorney due to acceptance of the case"; 5) "The customary fee"; 6) "Whether the fee is fixed or contingent"; 7) "Time limitations imposed by the client or the circumstances"; 8) "The amount involved and the results obtained"; 9) "The experience, reputation, and ability of the attorneys"; 10) "The 'undesirability' of the case"; 11) "The nature and length of the professional relationship with the client"; and 12) "Awards in similar cases." 488 F.2d 714, 717–19 (5th Cir. 1974).

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger v.*

*Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).

With respect to the individual attorneys in this matter, the most senior attorneys have

each been practicing civil rights law in the public interest for more than 20 years. Seaborn Decl.

¶¶ 16–19, 48–49; Seaborn Decl. Ex. A. Each has specialized experience in complex civil rights

class actions and disability rights work in particular. Seaborn Decl. ¶¶ 16–19, 48–49. Indeed,

these attorneys helped shape precedent in this Circuit, and under local law, governing public

entities' obligations to provide meaningful access to persons with disabilities in systemic, multi-

facility cases. *Id.* at ¶¶ 17, 48–49; *see also Brooklyn Ctr. for Indep. of the Disabled v. Metro.*

*Transp. Auth.*, 11 F.4th 55, 59 (2d Cir. 2021) (finding dispute of fact over whether people with

mobility disabilities could meaningfully access NYC subway elevators); *Ctr. for Indep. of*

*Disabled v. Metro. Transp. Auth.*, 184 A.D.3d 197, 210 (N.Y. App. Div. 2020) (affirming denial

of Defendants' motion to dismiss NYCHRL challenge to the NYC subway system's widespread

lack of elevators); *Disabled In Action v. Bd. of Elections*, 752 F.3d 189, 191 (2d Cir. 2014)

(affirming district court's granting of Plaintiffs' motion for summary judgment  in challenge to

thousands of inaccessible polling locations); *Disabled in Action v. City of New York*, 437 F.

Supp. 3d 298, 301 (S.D.N.Y. 2020) (successful challenge by people with mobility disabilities to

barriers at New York Police Department precincts); *Brooklyn Ctr. for Indep. of Disabled v.*

*Bloomberg*, 980 F. Supp. 2d 588, 594 (S.D.N.Y. 2013) (finding in favor of Plaintiffs following

bench trial on liability in first-of-its-kind case regarding the impermissible exclusion of people

with disabilities from emergency preparedness planning).

The more junior attorneys who billed the vast majority of hours on this case are

committed public interest attorneys with extensive civil rights, federal litigation, and disability

rights experience who have also contributed to precedent-setting decisions regarding the civil rights of people with disabilities. Seaborn Decl. ¶¶ 50–56; Atkinson Decl. ¶¶ 5–11; Atkinson Decl. Ex. A. Practitioners in the Southern District have recognized the skill of DRA and its attorneys. Outten Decl. ¶¶ 26–27; Brown Decl. ¶¶ 5, 15. At least one Court in this circuit has similarly noted the expertise of DRA attorneys who also worked on this matter. *See, e.g.*, *M.F. by & through Ferrer v. New York City Dep't of Educ.*, No. 18-CIV-6109 (NG), 2019 WL 2511874, at *2, *6 (E.D.N.Y. June 18, 2019) (stating that the resumes of Ms. Caiola, Ms. Atkinson, and Mr. Packrone "reflect superior academic achievements, an enduring commitment to public service, and a wealth of experience litigating civil rights matters" and noting "my observations of counsel thus far have shown [counsel] to be well-qualified . . . .").

3.      The Hourly Rates Requested Are in Line With Market Rates.

New York firms that practice complex litigation in the Southern District of New York routinely charge more than $700 per hour for associates' time, and upwards of $900 per hour for work done by partners.[9] Seaborn Decl. ¶¶ 39, 41–44. Plaintiffs' rates are below average for the private bar in SDNY. Seaborn Decl. ¶¶ 41–44 (including citations to the 2020 Real Rate Report); Seaborn Decl. Ex. P thereto; Brown Decl. ¶¶ 20–24; Outten Decl. ¶¶ 17–23. Sheppard Mullin bills partners at more than $1,000 per hour, senior associates at $680–$775, mid-level associates at $635–$680, junior associates at $550–$580, and paralegals and litigation assistants at $220–$455. Brown Decl. ¶¶ 22–24. Similarly, Outten & Golden bills senior partners (2004 and earlier) at $750–$1,050 per hour, junior partners (2011–2006) at $600–$700, senior associates (2013 graduate) at $525, mid-level associates (2017) at $400, and junior associates (2021) at $300.

---

[9] "[A]lthough not dispositive, the Court may rely on survey evidence as a cross-check on any fee award to ensure that it is reasonable." *Cortes v. Juquila Mexican Cuisine Corp.*, No. 17-CV-3942 (RER), 2021 WL 1193144, at *5 (E.D.N.Y. Mar. 29, 2021) (citation omitted).

Outten Decl. ¶¶ 18, 20. As another example, more than three years ago, partner rates in this district from Paul, Weiss, Rifkind, Wharton & Garrison LLP were between $1,165 and $1,560/hour, with associate rates between $640 and $1,065, and a "regular" paralegal rate of $315. Seaborn Decl. Ex. P.

Notably, in this case this Court has approved comparable rates—negotiated between Defendants and the Independent Monitor—for work to be performed by the Independent Monitor and his qualified staff to ensure compliance with the Final Remedy Order. ECF No. 212. Specifically, the Court approved hourly rates of $750 for the Independent Monitor; $675 for Counsel; $550 for Senior Associates; $400 for Junior Associates; and $240 for other legal staff, including paralegals. *Id.* at ¶ 5.

These rates are consistent with surveys conducted about attorney rates, which found the third quartile rates for litigation overall in New York City to be $985 for partners and $665 for associates. *See* Seaborn Decl. ¶ 41 (citing 2020 Real Rate Report at 29). With respect to years of experience, the third quartile rate for associates with less than three years of experience is $647, for associates with three to seven years of experience is $826, and for associates with seven or more years of experience is $945. *Id.* (citing 2020 Real Rate Report at 38).

4.  DRA's Hourly Rates Are Commensurate with Other Attorneys with Similar Skill and Experience.

DRA's rates are reasonable compared with attorneys of similar skill and experience with complex federal litigation in this district.[10] "At a number of points, the legislative history of

---

[10] The relevant comparison is "rates charged to clients of private law firms." *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987) (quoting *Blum*, 465 U.S. at 896 n.11). "Otherwise, the concept of 'prevailing market rates' would mean less for legal services organizations than for law firms, a position the Supreme Court has rejected. The Court has made clear that the 'lawyers of reasonably comparable skill, experience, and reputation' it had in mind are those of the private bar. '[T]he rates charged in private representations may afford relevant comparisons.'" *Id.* (quoting *Blum*, 465 U.S. at 896, n.11).

§ 1988 reveals Congress' basic goal that attorneys should view civil rights cases as essentially equivalent to other types of work they could do … [and thus] fee awards under § 1988 should be equivalent to fees 'in other types of equally complex Federal litigation, such as antitrust cases, and not be reduced because the rights involved may be nonpecuniary in nature.'" *Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983) (J. Brennan, concurring) (quoting Senate Report 6, U.S. Code Cong. & Admin. News 1976 at 5913).

Surveys of attorney billing in these practice areas are far higher than what DRA seeks in this motion. For example, for commercial litigation in New York City, the third quartile rates are $1,350 for partners and $867 for associates; for regulatory and compliance work, the third quartile rates are $1,295 for partners and $847 for associates; for finance and securities work, the third quartile rates are $1,450 for partners and $915 for associates; and for intellectual property work that is not patent or trademark, $851 for partners and $722 for associates. Seaborn Decl. ¶ 41 (citing 2020 Real Rate Report at 61, 67, 81, and 100).

This District has awarded similar hourly rates for attorneys performing complex federal litigation. Recent cases in this district support counsel's requested rates. *See, e.g.*, *Cates*, 2021 WL 4847890 at *3 (finding reasonable rates in an ERISA litigation of $1,060 for attorneys with 25+ years of experience; $900 for attorneys with 15–24 years of experience; $650 for attorneys with 5–14 years of experience; $490 for attorneys with 2–4 years of experience; and $330 for paralegals and law clerks, and noting the need to use a national market because "the number of plaintiff's firms which have the necessary expertise and are willing to take the risk and devote to resources to litigate complex claims is small"); *City of Almaty v. Ablyazov*, No. 15CV05345AJNKHP, 2020 WL 5440553, at *3–4 (S.D.N.Y. Sept. 10, 2020) (awarding rates

20

including $950 per hour and $745 per hour for partners, and $495 per hour for an associate with five years of experience at time of sanctions motion at issue[11]).

Historical rates in the district also support counsel's requested rates when adjusted for inflation. *See, e.g.*, *Barbour*, 788 F. Supp. 2d at 225 (awarding $625 and $450 per hour for senior attorneys more than 10 years ago[12] involving a garden-variety false arrest case that was resolved on a Rule 68 Offer of Judgment); *Errant Gene Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Research*, 286 F. Supp. 3d 585, 588–89 (S.D.N.Y. 2018) (finding reasonable $765 hourly rate for partners and $325–$450 for associates[13] in sanctions motions); *TufAmerica Inc. v. Diamond*, No. 12-CV-3529 (AJN), 2016 WL 1029553, at *5–6 (S.D.N.Y. Mar. 9, 2016) (approving rates of $675–$678.23 per hour for partners, and $375–$425 per hour associates with less than two years' experience[14] in a copyright infringement matter); *U.S. Bank Nat'l Ass'n v. Dexia Real Est. Cap. Markets*, No. 12 CIV. 9412 (PAE), 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) (finding rates up to $1,055 per hour reasonable and noting "partner billing rates in excess of $1,000 an hour[ ] are by now not uncommon in the context of complex commercial litigation") (citing *Themis Capital v. Democratic Republic of Congo*, No. 09 Civ. 1652 (PAE), 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014) (finding reasonable hourly rates of $505.55 for associates, $742.84 for a counsel, and $871.04 for a partner[15] in complex breach of contract suit)); *Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13-

---

[11] Adjusted for inflation, the hourly rates are equivalent to $1,055.22 and $827.52 for the partners, and $549.83 for the associate, as of April 2022. U.S. Bureau of Labor Statistics, CPI Inflation Calculator, *available at* https://www.bls.gov/data/inflation_calculator.htm. Future inflation calculations in this brief are derived from the same tool and also keyed to April 2022.

[12] Adjusted for inflation, the hourly rates would be $799.65 and $575.75 for senior attorneys.

[13] Adjusted for inflation, the hourly rates would be $892.29 for partners and $379.08–$524.87 for associates.

[14] Adjusted for inflation, the hourly rates would be $819.50–$823.42 for partners and $455.28–$515.98 for associates.

[15] Adjusted for inflation, the hourly rates in *U.S. Bank Nat'l Ass'n* would be $1,203.86 for partners; the rates in *Themis Capital* would be $614.03 for associates, $902.24 for a counsel, and $1,057.95 for a partner.

CV-2493 (KBF), 2014 WL 4792082, at *2 (S.D.N.Y. Sept. 24, 2014) ("In recent years, New York district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour[16]."); *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 513–15 (S.D.N.Y. 2010) (approving hourly rates for partners of $500 and $550 per hour and for associates of $200–250 per hour[17] in multi-plaintiff employment discrimination case more than 12 years ago).

DRA's paralegal rates are similarly reasonable. *Nat'l Ass'n for Specialty Food Trade, Inc. v. Construct Data Verlag AG*, No. 04 CIV. 2983 DLC/KNF, 2006 WL 5804603, at *6 (S.D.N.Y. Dec. 11, 2006), *report and recommendation adopted sub nom. Nat'l Assn for the Specialty Food Trade, Inc. v. Construct Data Verlag AG*, 2007 WL 656274 (S.D.N.Y. Feb. 23, 2007) (finding "$180 is a reasonable hourly rate for paralegal services" 16 years ago[18]); *Hnot v. Willis Group Holdings Ltd.,* No. 01 Civ. 6558, 2008 WL 1166309, at *3 (S.D.N.Y. Apr. 7, 2008) (noting "ample support for $150 per hour as a reasonable rate for paralegals in this District" 14 years ago[19]).

### 5. DRA's Hourly Rates Have Been Approved By Other Federal Courts.

Similarly, the hourly rates of Plaintiffs' counsel have been approved in the District of New Jersey, the Northern and Southern Districts of California, and the District of Washington. Seaborn Decl. ¶¶ 37–38. The hourly rates of New York City attorneys are at least as high, and sometimes significantly higher, than rates charged in those markets. *Id.* at ¶ 39. In March 2022, the District of New Jersey approved DRA's 2020 rates: $815 for Michelle Caiola, $425 for Seth Packrone, and $365 for Andrea Kozak-Oxnard. Opinion, *Adam X. v. N.J. Dep't of Corr.*, Civ No.

---

[16] Adjusted for inflation, the hourly rates would be $607.29–$971.67.
[17] Adjusted for inflation, the hourly rates would be $666.95 and $733.64 for partners, and $266.78–$333.47 for associates.
[18] Adjusted for inflation, the $180 hourly rate is equivalent to $257.88.
[19] Adjusted for inflation, the $150 hourly rate is equivalent to $201.87.

17-00188 (FLW) (LHG), ECF No. 150, at 23 (D.N.J. Mar. 3, 2022) (Seaborn Decl., Ex. D ). Similarly, in September 2021, DRA attorney Sean Betouliere, a 2015 graduate like Ms. Atkinson and Mr. Packrone, was awarded a 2021 rate of $445 per hour for a fair housing case with only a single plaintiff and a single defendant, which settled. Order on Motion for Attorneys' Fees and Costs, *Roque v. Seattle Housing Auth.*, No. 2:20-cv-658-JRC, ECF No. 92, at 5–6 (W.D. Wa. Sept. 28, 2021) (Seaborn Decl. ¶ 37(b), Ex. E). Thomas Zito, a 2010 graduate similar to Ms. Holzman (2011), was awarded a rate of $545. *Id.*

DRA's rates are routinely found reasonable. *See T.G. v. Kern County*, No. 1:18-CV-00257-JLT, ECF No. 73 (E.D. Cal. June 5, 2020) (approving 2020 rates for settlement of attorneys' fees) (Seaborn Decl., Ex. F); *Cmty. Res. For Indep. Living v. Mobility Works of Cal.*, No. 18-CV-06012-JSW, 2020 WL 10505223, at *2 (N.D. Cal., May 22, 2020) (approving 2020 rates, including $795 for Mr. Seaborn, $525 for Thomas Zito, $425 for Sean Betouliere, $275 for paralegals, and $230 for litigation assistants) (Seaborn Decl., Ex. G); *Nat'l Fed'n of the Blind v. Uber Techs., Inc.*, No. 14-cv-04086-NC, ECF No. 203 (N.D. Cal. Nov. 8, 2019) (approving 2019 rates for monitoring compliance with the settlement) (Seaborn Decl., Ex. H); *Cole v. Cnty. of Santa Clara*, No. 16-CV-06594-LHK, ECF No. 86 (N.D. Cal. Mar. 21, 2019) (approving 2018 rates, including $775 for Stuart Seaborn, and $425 for Michelle Iorio with five years' experience) (Seaborn Decl., Ex. I); *Ochoa v. City of Long Beach*, No. 2:14-cv-04307-DSF-FFM, ECF No. 173 (C.D. Cal. Oct. 17, 2017) (approving settlement of attorneys' fees based on 2013-2017 rates) (Seaborn Decl., Ex. J); *Nat'l Fed'n of the Blind v. Uber Techs., Inc.*, 3:14-cv-04086 NC, ECF Nos. 139, 144, 193 (N.D. Cal.) (approving 2016 rates) (Seaborn Decl., Ex. K); *G.F. v. Contra Costa Cnty.*, No. 3:13-cv-03667-MEJ, ECF No. 307 (N.D. Cal. Nov. 25, 2015) (approving 2014 rates) (Seaborn Decl., Ex. L); *Cmtys. Actively Living Indep. & Free v. City &*

*Cnty. of Los Angeles*, No. 09-cv-00287-CBM-RZ, ECF No. 255, (C.D. Cal. June 10, 2013) (finding 2012 rates reasonable) (Seaborn Decl., Ex. M); *Californians for Disability Rights v. Cal. Dep't of Transp.*, No. C 06-5125 SBA, ECF Nos. 528, 529 (N.D. Cal. Dec. 13, 2010) (finding 2010 rates reasonable) (Seaborn Decl., Ex. N); *Nat'l Fed'n of the Blind v. Target Corp.*, No. C 06-01802 MHP, 2009 WL 2390261 (N.D. Cal. Aug. 3, 2009) (finding 2008 rates reasonable) (Seaborn Decl., Ex. O).

      6.      <u>Case-Specific Considerations Also Support a Full Lodestar Award to Plaintiffs.</u>

The award of reasonable fees "is case-specific, such that a reasonable rate for a routine task in a simple case may be quite different from a reasonable rate for a complex task in a challenging case, even when done by the same attorney or firm[.]" *Hindman LLC v. Mihaly*, No. 21 MISC. 452 (PAE), 2022 WL 19752, at *2 (S.D.N.Y. Jan. 3, 2022) (internal quotation marks and citations omitted); *see HomeAway.com, Inc. v. City of New York*, No. 18 CIV. 7742 (PAE), 2021 WL 791232, at *16 (S.D.N.Y. Mar. 1, 2021) ("In determining the rates it finds reasonable here, the Court has been mindful of factors that favor a higher billing rate. These include the impressive credentials and deep relevant experience of the members of [the prevailing party's] legal team, their unique experience with these cases of this nature, and the customary billing rates of these lawyers.").

Here, the case-specific factors—the novelty of the issues presented, skill and experience of capable counsel, and exceptional results obtained for a large class—all lend themselves to an hourly rate on the higher end of the scale.

With respect to novelty, "Courts interpret the term 'novel and complex' as pertaining to cases involving areas of unsettled law or issues of first impression." *Indep. Project, Inc. v. Ventresca Bros. Constr. Co.*, 397 F. Supp. 3d 482, 495 (S.D.N.Y. 2019) (citations omitted). Here, the legal claims at issue were untested and risky. Prior to this case, there was only one

24

APS-related lawsuit in the country, which settled shortly after the Defendants were denied summary judgment. *Scharff v. County of Nassau*, No. 10-CV-4208(DRH)(AKT), 2014 WL 2454639 (E.D.N.Y. June 2, 2014).[20] Thus, this was a case of first impression not just in the district, or even the Circuit, but nationally. *See Bailey v. Pataki*, No. 08-CV-8563 (JSR), 2016 WL 3545941, at *2, 6 (S.D.N.Y. June 16, 2016) (awarding hourly rates on the higher end of the scale in a constitutional civil rights case for only nominal damages that nevertheless resulted in "ground-breaking conclusions of law" that "constituted a new rule of liability") (internal quotation and citation omitted). There was simply no robust body of law regarding accessible pedestrian signals or accessible streetscapes for people who are blind.

Plaintiffs thus took a substantial risk to extend the current law to the accessibility of crossing signals for blind pedestrians. Moreover, developing Plaintiffs' legal theory required substantial attorney time and skill to gather and analyze the complex facts of this matter. Rather than re-affirm the law's application to existing fact patterns, cases like this one represent crucial efforts to extend legal protections to keep up with a changing landscape:

> While similar results in established areas of law might be less impressive or worthy of additional encouragement, it takes exceptional creativity to establish the lawfulness of extending established rights into uncharted legal territory. When successful, these efforts must earn a premium to encourage novel legal arguments and a stringent examination of the accessibility of new technologies. The alternative is a stagnant legal landscape where advances in technology render statutory protections ineffective or obsolete.

*Nat'l Fed'n of the Blind v. Target Corp.*, No. C 06-01802 MHP, 2009 WL 2390261, at *6 (N.D. Cal. Aug. 3, 2009) (regarding DRA case challenging the inaccessibility of a retail store's website under the ADA). The novelty and complexity of this case favor a higher hourly rate.

---

[20] Similarly, even though it is well established that the NYCHRL must "be construed liberally for the accomplishment of [its] uniquely broad and remedial purposes," N.Y.C. Admin. Code § 8-130, relatively little NYCHRL case law precedent existed in the context of transportation-related public accommodations, much less the NYCHRL's application to the City's signalized intersections and pedestrian grid.

25

DRA's attorneys also exhibited notable skill, professionalism, and collegiality throughout the life of this case, likewise supporting an award on the higher end of the scale. This case secured broad relief for hundreds of thousands of people with vision disabilities, and involved numerous difficult factual and legal issues, as well as the broad scope of a pedestrian grid of more than 14,000 signalized intersections in the largest city in the country. It required detailed knowledge and expertise about the specific mobility needs of people with vision disabilities; rules and best practices governing traffic signals, including federal and state traffic facility technical engineering standards and the nuances of their application to APS; transportation projects, particularly as they relate to accessibility features; municipal, federal, state, and local financing; construction, maintenance, and installation of complex infrastructure; and decades of political history, both locally and nationally, regarding APS requirements. Most importantly, this case required active and consistent engagement with, and input and participation from, the Class of more than 200,000 blind pedestrians, and the organizations that advocate for them.

Counsel engaged deeply with the meaningful access standard in this Circuit, which had never been applied in the street signal context and for which there are few class-wide precedential examples. Counsel also nimbly adapted its positions as the case progressed, withdrawing claims and proposals when provided evidence that they were unworkable, and suggesting innovative ways to address unexpected challenges. Plaintiffs' Counsel has demonstrated great skill and expertise in presenting and negotiating multiple complex questions of fact and law, many of which had never previously been addressed by a court, and which posed substantial risk of an adverse outcome.

Day-to-day, counsel consistently kept the case moving, as this Court observed. ECF Nos. 55, 85. PMC Tr. at 4–6. Counsel also adeptly handled numerous challenges that could have

greatly extended the duration of the case: a document production of more than 200,000 pages only three weeks before the close of fact discovery; the prompt identification and retention of a successor expert after the unexpected passing of Ms. Barlow; and an accelerated remedial briefing schedule, particularly after Defendants amended their proposed remedy just days before the deadline and Plaintiffs had only one week to file fresh opposition to the new proposal. Atkinson Decl. ¶¶ 22, 38–39. As class counsel, DRA excelled at outreach and service to the class during a pandemic, which resulted in robust community participation both through letters to the Court and attendance, both virtually and in person, at this matter's remedial hearing. Atkinson Decl. ¶¶ 42–51.

Ultimately, "the most critical factor' in the district court's determination of what constitutes reasonable attorneys' fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). There is no denying the expansive, landmark result that Plaintiffs' Counsel was able to achieve in this case. Prior to this lawsuit, the City of New York was installing APS at only 75 intersections per year, and was not installing them with new intersections or during rehabilitation projects (approximately 100–200 intersections per year). The city was therefore becoming *less* accessible over time. Even after Defendants changed their policy and began installing APS with new intersections in an attempt to defeat Plaintiffs' motion for summary judgment, the pace of installation was so slow that the City would not have become fully accessible for more than 60 years.

The remedy this Court has ordered is extraordinary. It will transform the ability of hundreds of thousands of blind and low vision residents and visitors to get around New York City. The same city that spent two decades failing to make headway on this critical aspect of

pedestrian safety will now install APS with all new intersections; install APS with all altered intersections; and accelerate APS installation to reach 10,000 intersections in the next decade alone. This lawsuit has changed the New York City streetscape for generations to come, and will make New York City a safer, more inclusive place for everyone. Such a transformative and impactful result should be reflected in an hourly rate on the high end of the scale.

**D.**     **Plaintiffs Are Entitled to Their Litigation Costs.**

Plaintiffs request their costs in the amount of $43,636.45. Seaborn Decl. ¶ 73; Seaborn Decl. Ex. AA. Costs here, which include filing fees, expert fees, legal research, document imaging and copying, and travel expenses, are reasonable for litigation of this kind and of the type normally charged by attorneys to clients. *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 27 (S.D.N.Y. 2016) (citing *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003)); *see also* N.Y.C. Admin. Code § 8-502(g) (a court may award a prevailing party "reasonable attorneys' fees, expert fees, and other costs"); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 547 (S.D.N.Y. 2008); *Morris v. Eversley*, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004) (stating that "costs awarded under § 1988" include, among other costs, "any additional costs ordinarily charged in the particular legal marketplace"); *Access 4 All, Inc. v. Hi 57 Hotel, LLC*, No. 04-CV-6620-GBD-FM, 2006 WL 196969, at *4 (S.D.N.Y. Jan. 26, 2006).

Plaintiffs' largest cost are expert fees for Ms. Barlow and Mr. Bourquin, totaling $26,181.80. Seaborn Decl. Ex. AA. These fees were both reasonable and necessary to the prosecution of this case. "The failure to shift expert fees upon successful litigation could have a chilling effect on disability discrimination enforcement. . . ." *Lawton v. Success Acad. of Fort Greene*, No. 15-CV-07058-FB-SMG, 2021 WL 911981, at *2 (E.D.N.Y. Mar. 10, 2021). *See also Boyce v. Cable Assoc.*, No. 86 Civ. 8957 (RJW), 1990 WL 300887, at *8 (S.D.N.Y. Apr. 17,

1990) ("Expert testimony is often a crucial component in proving discrimination in particular cases, and it is likely that competent attorneys would be dissuaded from representing even plaintiffs with strong claims" if their expert fee recovery were significantly limited.).

**E.      Plaintiffs Are Entitled to Their Fees on Fees.**

Lastly, reasonable fees are routinely awarded for work and time spent on litigating fee applications. *See Quaratino*, 166 F.3d at 428; *Barbour*, 788 F. Supp. 2d at 223. The Adjusted Lodestar reflects the reasonable fees incurred in connection with this action through May 31, 2022. Plaintiffs' Counsel will also seek to recover in addition to the Adjusted Lodestar reasonable additional fees incurred in preparing this fee application after that date, and will submit invoices and documentation supporting this additional request.

Dated:  June 9, 2022
        New York, New York

Respectfully submitted,

DISABILITY RIGHTS ADVOCATES

*Torie Atkinson*
_____
Torie Atkinson
Chloe Holzman
DISABILITY RIGHTS ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10117-5621
Tel:  (212) 644-8644
Fax:  (212) 644-8636
*Attorneys for Plaintiffs*

29